## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Fishman Haygood Phelps Walmsley,** | ) |
| **Willis & Swanson, L.L.P.,** *and all others* | ) |
| *similarly situated,* | ) |
| | ) **CLASS ACTION COMPLAINT** |
| | ) **JURY TRIAL DEMANDED** |
| Plaintiffs, | ) |
| v. | ) **CIVIL ACTION NO:** |
| | ) |
| **State Street Corporation, State Street** | ) |
| **Bank & Trust Co., State Street Bank &** | ) |
| **Trust Co. of New Hampshire,** | ) |
| **and State Street Global Advisors,** | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Fishman Haygood Phelps Walmsley Willis & Swanson, L.L.P. ("Fishman" or

"Plaintiff"), as Plan Administrator for the Fishman Haygood Phelps Walmsley Willis &

Swanson, L.L.P. Profit Sharing Plan (the "Fishman Plan" or "Plan"), brings this action on behalf

of the Plan, and on behalf of all similarly-situated ERISA plans (the Plan and similarly-situated

plans are referred to as the "Plans"), that suffered losses as a result of the breaches of fiduciary

duties, described in this Complaint, committed by Defendants State Street Corporation ("SSC"),

State Street Bank & Trust Company ("SSBT"), State Street Global Advisors ("SSGA"), and

State Street Bank & Trust Co. of New Hampshire ("SSNH") (collectively with their affiliates,

the "State Street Defendants"). Plaintiff brings this action by and through its undersigned

attorneys based upon personal knowledge and information obtained through investigation by

their counsel. Plaintiff believes that reasonable opportunity for discovery will uncover further substantial support for the allegations in this Complaint.

## I. **PRELIMINARY STATEMENT**

1.      This Complaint arises from breach of ERISA-mandated fiduciary duties, as well as other ERISA violations, that Defendants committed as investment manager and/or investment advisor to the Plans. Specifically, in violation of their fiduciary duties and ERISA's prohibited transaction rules, Defendants recklessly engaged in the practice known as "securities lending" for their own benefit, in a manner that involved imprudent and unreasonable risk of loss to the Plans. As a result of Defendants' self-serving securities lending practices, which violated Defendants' ERISA fiduciary responsibilities, the Plans suffered large losses.

2.      In simple terms, the practice of securities lending involves the temporary "loan" of a stock (or other security) by its long-term owner (often a large institutional investor) to a borrower who needs the stock for short term purposes. The borrower secures the loan with collateral. The collateral is then supposed to be invested in safe, short-term, liquid instruments so that the long-term owner of the stock is able to receive some investment income from the collateral investment.

3.      If the collateral is invested in secure investments, such as U.S. government bonds, a retirement plan engaging in securities lending may earn some degree of return for little risk.

4.      The Plans pooled their retirement funds in "collective trusts" managed by the State Street Defendants. A collective trust is an investment option established for the collective investment of a group of institutional investors, including retirement plans and pension funds. All of the members in a collective trust share, *pro rata*, in the same gains and losses. The

2

collective trusts at issue in this case (the "Collective Trusts") offered particular investment styles, but all of them engaged in securities lending, and, as a result of Defendants' illegal conduct, the Plans suffered loss.

5.      The Fishman Plan invested in the following Collective Trusts, all of which participated in Defendants' securities lending programs, offered and managed by Defendants: Stable Asset Return Fund; Intermediate Bond Fund; Balanced Fund; Large-Cap Value Equity Fund; Large-Cap Growth Equity Fund; Index Equity Fund; Mid-Cap Value Equity Fund; Mid-Cap Growth Equity Fund; Small-Cap Equity Fund; International Equity Fund; 2010 Retirement Date Fund; 2020 Retirement Date Fund; 2030 Retirement Date Fund; and 2040 Retirement Date Fund. Defendants offer and manage many Collective Trusts covering a wide array of investment styles to institutional investors, including retirement plans.

6.      Each of the Collective Trusts is managed by the State Street Defendants according to an investment policy. Some, if not all, of these funds are measured against an established benchmark. For example, the performance of the Index Equity Fund, in which the Plan invested, is measured against the performance of the Russell 3000 Index.

7.      The Collective Trusts loaned securities they held (and the Plans held indirectly) to borrowers who reportedly posted collateral equal to 102-105% of the value of the borrowed securities. Defendants then invested the collateral (the "Collateral") in other instruments through still other collective trusts. (The funds in which State Street Defendants invested the Collateral shall be referred to as the "Collateral Pools".)

8.      Defendants collected fees for facilitating the Collective Trusts' securities lending transactions and shared with the Plans in the investment returns of the Collateral.

3

9.    As "Lending Fiduciaries" in securities lending arrangements, Defendants are supposed to guard against the risk of default by ensuring that the Collateral is safe and liquid and that such Collateral is invested prudently in Collateral Pools that are safe and liquid.

10.    Upon information and belief, Defendants received a substantial portion of any profits that the Plans earned from the Collateral Pools. Defendants also earned additional fees from securities lending transactions. Defendants did not bear any risk of investment loss in the management of the Collateral Pools.

11.    The ABA Retirement Funds Program prospectus published by Defendants on January 29, 2009 ("Prospectus"), reveals that their various Collateral Pools have lost billions of dollars over the past year. As of the end of 2008, the Collateral Pools were valued at 93 cents on the dollar for funds that are supposed to have a net asset value of $1.00 per unit. Thus, the Collateral Pools have lost approximately 7% of their value. At first blush, this loss may appear small compared to the current stock market conditions. But Collateral Pools are supposed to be invested in very low-risk and liquid instruments like U.S. Treasuries. Defendants, however, have invested in high-risk, illiquid instruments, for which there is no current market. The losses in the Collateral Pools are, in turn, borne by the investors, like the Plans, who invest in the Collective Trusts. The losses in the Collateral Pools have caused substantial losses to investors in the Collective Trusts, including the Plans. On information and belief, losses have occurred in all of Defendants' Collective Trusts that engage in securities lending.

12.    The fees and other compensation Defendants collected in connection with their securities lending activities were unreasonable in light of the risks taken by Defendants with the Plans' assets and the investment losses suffered by the Plans as a result of Defendants'

4

imprudent management of the Collateral Pools. As one consultant commented, "a perennial problem with securities lending programs" occurs where the money manager gets a percentage of the earned investment gains and therefore has an incentive "to creep out there on the risk scale." Defendants put their own interests ahead of the Plans' interests by taking unnecessary and unreasonable risk in investing the Collateral Pools in order to maximize Defendants' share of the investment returns.

13.     There are three primary risks associated with securities lending:

- **OPERATIONAL RISK** – the risk that the Lending Fiduciary, such as Defendants, did not administer the program as agreed. This includes the fiduciary's failure to mark to market collateralization levels and to post corporate actions and income, including all economic benefits of ownership except for proxy voting.

- **BORROWER/COUNTERPARTY DEFAULT RISK** – the risk that the borrower fails to return the securities due to insolvency or other reasons. Borrower default also leads to trade settlement risk, which is the risk that the lender sells a security on loan and that the loaned security is not returned by the borrower. Therefore the trade fails or the seller is charged with an overdraft fee.

- **COLLATERAL REINVESTMENT RISK** – the risk of investment loss from the reinvestment of the cash collateral by the Lending Fiduciary. The real risk is that the investment of the cash collateral will not earn a sufficient return to cover the agreed upon rebate rate or even to return the collateral at its original value because of interest rate, liquidity and/or credit risks.

14.     Defendants' violations of ERISA arise, *inter alia*, from their imprudence, lack of care, and self-dealing with respect to Collateral reinvestment. Collateral reinvestment risk is shouldered by the lender, here the investors in the Collective Trusts, including the Plans. The lender has to cover both the rebate rate (paid to the borrower) and the full principal value of the cash collateral posted by the borrower. If the rate of return on the invested Collateral is not sufficient to pay the rebate rate coupled with the original value of the collateral (as well as the facilitating fiduciary's fees, here the State Street Defendants), the lender incurs an investment

loss on the transaction. Of course, if the invested Collateral actually loses money, as is the case with the Collateral Pools, the loss is that much larger. The risk of loss can be minimized, and in Defendants' exercise of their fiduciary duties, should have been minimized, by restricting Collateral investment to Collateral Pools that are very high quality and liquid, and then carefully managing potential asset liability duration differences.

15.     The State Street Defendants breached their duties of prudence, loyalty, and exclusive purpose under ERISA § 404(a) by investing Plan assets recklessly and imprudently, by acting disloyally, and by causing massive losses to the Plans through the Defendants' imprudent and improperly risky actions.

16.     Defendants also violated certain provisions of ERISA that prohibit fiduciaries like Defendants from causing a retirement plan to engage in transactions with related parties and from engaging in self-dealing transactions. By using Plan assets for the benefit of other parties, and by collecting unreasonable fees and other compensation in connection with securities lending and placing their own interests ahead of those of the Plans, Defendants engaged in multiple prohibited transactions, which are *per se* unlawful in violation of ERISA § 406, and not exempt under any individual, class, or statutory exemption.

17.     ERISA §§ 409(a) and 502(a)(2) authorize ERISA fiduciaries, such as Plaintiff, to sue in a representative capacity for losses suffered by plans as a result of breaches of fiduciary duty. Pursuant to that authority, Plaintiff brings this action as a class action under Fed. R. Civ. P. 23 on behalf the Plan and all other similarly-situated Plans, *i.e.,* all Plans that invested Collateral in the Collateral Pools through the Collective Trusts. Plaintiff seeks to restore losses to the Plans,

for which the State Street Defendants are personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, and 1132(a)(2).

18.    The State Street Defendants have sole possession of a great deal of relevant information and documents concerning Plaintiff's allegations. Therefore, following discovery, Plaintiff will, to the extent necessary and appropriate, amend this Complaint, or, if required, seek leave to amend, to add additional facts that further support Plaintiff's claims.

## II. JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and ERISA §502(e)(1), codified at 29 U.S.C. § 1132(e)(1). The claims asserted herein are brought as a class action under Rule 23 of the Federal Rules of Civil Procedure.

20.    Venue is proper in this district pursuant to ERISA §502(e)(2), codified at 29 U.S.C. §1132(e)(2), because SSC, SSBT, and SSGA are headquartered in this District.

## III. THE PARTIES

### Plaintiff

21.    **Fishman Haygood Phelps Walmsley Willis & Swanson ("Fishman" or "Plaintiff")**. Fishman is the plan administrator for the Plan and is authorized under ERISA §502(a)(2) to represent the Plan in lawsuits arising under ERISA. The Plan is a defined contribution plan under ERISA, established in 1995. The Plan invested in the following Collective Trust offered or managed by State Street Defendants: Stable Asset Return Fund; Intermediate Bond Fund; Balanced Fund; Large-Cap Value Equity Fund; Large-Cap Growth Equity Fund; Index Equity Fund; Mid-Cap Value Equity Fund; Mid-Cap Growth Equity Fund; Small-Cap Equity Fund; International Equity Fund; 2010 Retirement Date Fund; 2020

Retirement Date Fund; 2030 Retirement Date Fund; and 2040 Retirement Date Fund. All of the

Collective Trusts participated in Defendants' securities lending programs.

**Defendants**

22.     **State Street Bank & Trust Company ("SSBT")**. SSBT is the principal banking

subsidiary of SSC. SSBT is the trustee of the Plan and is located at 3 Batterymarch Park, Quincy,

Massachusetts. As trustee, SSBT is, by definition, a fiduciary to the Plan.

23.     **State Street Bank & Trust Company of New Hampshire ("SSNH")**. SSNH is

the trustee and administrator of the American Bar Association Members/State Street Collective

Trust ("ABA Trust"), a trust that aggregates the assets of retirement plans sponsored by lawyers

and law firms. SSNH is a wholly-owned subsidiary of SSBT. The ABA Trust holds assets for

investment in Collective Trusts offered by Defendants. SSNH offers and administers the

investment options available to plans that participate in the ABA Trust.

24.     **State Street Corporation ("SSC")**. SSC is a financial holding company,

organized in 1970 under the laws of the Commonwealth of Massachusetts. Through its

subsidiaries, including its principal banking subsidiary, SSBT, SSC provides a full range of

products and services for institutional investors worldwide. Its executive offices are located at

One Lincoln Street, Boston, Massachusetts.

25.     **State Street Global Advisors ("SSGA")**. SSGA is the investment management

arm of SSC. On information and belief, SSGA is the Investment Manager, and therefore a

fiduciary, for some or all of the Collective Trusts that State Street Defendants offer and manage.

To the extent that the investment advisor for a given Collective Trust is not an affiliate of State

8

Street Defendants, State Street Defendants retain the discretion and control over the securities lending feature of the Collective Trust.

## IV. DEFENDANTS' FIDUCIARY STATUS

26.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under §402(a)(1), 29 U.S.C. §1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA §3(21)(A)(i), 29 U.S.C. §1002(21)(A)(i).

27.     **Investment Manager**. Under ERISA, an investment manager or investment adviser is a fiduciary. ERISA defines investment manager as:

> (38) any fiduciary (other than a trustee or named fiduciary, as defined in section 1102(a)(2) of this title) –
>
> (A) who has the power to manage, acquire, or dispose of any asset of a plan;
>
> (B) who
>
> (i) is registered as an investment adviser under the Investment Advisers Act of 1940 [15 U.S.C. 80b-1 et seq.];
>
> (ii) is not registered as an investment adviser under such Act by reason of paragraph (1) of section 203A(a) of such Act [15 U.S.C. 80b-3a (a)], is registered as an investment adviser under the laws of the State (referred to in such paragraph (1)) in which it maintains its principal office and place of business, and, at the time

9

the fiduciary last filed the registration form most recently filed by the fiduciary with such State in order to maintain the fiduciary's registration under the laws of such State, also filed a copy of such form with the Secretary;

(iii) is a bank, as defined in that Act; or

(iv) is an insurance company qualified to perform services described in subparagraph (A) under the laws of more than one State; and

(C) has acknowledged in writing that he is a fiduciary with respect to the plan.

ERISA §3(38), 29 U.S.C. §1002(38).

28.     Here, the State Street Defendants are named and/or serve as the Investment Manager, Trustee, Advisor or administrator of all the Collective Trusts and thus are fiduciaries to the Plans. Moreover, State Street Defendants exercise discretion and control over the Plans' assets because the State Street Defendants manage the Collateral Pools, and thus decide how to invest the Collateral posted by borrowers. In this capacity, the State Street Defendants were responsible for prudently and loyally managing the assets that were invested in the Collective Trusts and Collateral Pools for the benefit of the Plans.

## V. **SUBSTANTIVE ALLEGATIONS**

29.     Several of the Defendants' ERISA violations arise from their breaches of fiduciary duties relating to collateral reinvestment. (Discovery may reveal failures to manage operational and borrower default risk as well.)

30.     The Collective Trusts participate in the Defendants' securities lending program. Under the securities lending program, securities of the particular Collective Trust are loaned to institutional borrowers, and the lender of such securities (the Collective Trusts and, indirectly,

10

the Plans) receives Collateral in excess of the value of the loaned securities, generally 102% of the value of domestic securities and 105% of the value of foreign securities. Such Collateral may take the form of cash or securities.

31.     All cash Collateral received by the lender from its borrowers is reinvested for the account and risk of the lender (the Collective Trusts, and indirectly the Plans) in one or more Collateral Pools managed by Defendants or their affiliates. The Collateral Pools generally utilize amortized cost pricing of the underlying investments (in an effort to maintain a constant price for units purchased in, or redeemed from, the Collateral Pool) as opposed to marking the underlying investments to market (which would result in a fluctuating value for the units of the cash Collateral Pool). If a Collateral Pool suffers losses or its underlying investments default, there is insufficient liquidity in the Collateral Pool to discharge its obligations to fund cash payments to the borrowers, the Collateral Pool is required to sell investments prior to their maturity at a loss, and/or the Collateral Pool is required to cease using amortized cost pricing in whole or in part and is forced to reduce the value of its units. Then the affected lenders (the Collective Trusts, and indirectly the Plans) are obligated to utilize their own assets and cash to satisfy any deficiency or losses that may arise with respect to their investment in the Collateral Pools. This causes losses to the affected Collective Trusts, and therefore to the Plans.

32.     The Collective Trusts, and indirectly the Plans, and other lenders bear the entire risk with respect to the investment of cash Collateral. On December 31, 2008, Defendants' Collateral Pools in which the Collective Trusts invest cash Collateral had an average net asset value of approximate $0.93 per unit, in comparison to the amortized cost price of $1.00 per unit at which purchases and redemptions are made in such cash Collateral Pools.

11

33.     The lender of securities is also obligated to pay a fee to the borrower, the rebate rate, as compensation for the borrower's transfer of cash to the lender. If the Collateral Pool fails to generate sufficient income on its investments to cover the fees due to borrowers, then the affected lenders (the Collective Trusts, and indirectly the Plans) of securities are required to fund any shortfall from their own resources, which would adversely impact the Collective Trusts. Lenders, not Defendants, bear this risk as well.

34.     As investors in the Collective Trusts, the Plans were required to cover the full principal value of the cash Collateral posted by the borrower. If the value of the investments in the Collateral Pools results in a shortfall on the original value of the Collateral, the Plans have suffered an "investment loss." When securities lending is properly administered, the risk of loss is minimized by using very high quality, liquid instruments for collateral investment and then carefully managing potential asset liability duration differences. Generally, Collateral investments are invested in short term securities to avoid losses and duration risk that may occur in securities or other investments that are meant to be held long term. On information and belief, Defendants purchased investments for the Collateral Pools without prudently evaluating the duration of such investments and said duration's impact on the liquidity of the Collateral Pools and, ultimately, the Collective Trusts.

35.     Defendants' failure to prudently manage the Collateral Pools has caused the Plans substantial losses by failing to use very high quality, liquid instruments for Collateral Pools and failing to manage the asset liability duration differences. Thus, as borrowers who posted cash or U.S. Treasuries as Collateral seek the return of that Collateral (plus rebates), the Collateral Pools must make up the shortfall between the return of the invested Collateral and the amount

12

promised to the borrower. Ultimately, investors in the Collective Trusts make up the shortfall, which results in more than normal tracking error diminished performance of Collective Trusts in comparison to their respective benchmarks. Further, when borrowers demand the return of their Collateral but that Collateral has been invested in illiquid, longer-term investments (such as many derivatives and mortgage-backed securities) by Defendants, the Collective Trusts and ultimately their investors, including the Plans, are forced to realize immediate losses rather than holding the investments to duration.

36.     Defendants reported that, purportedly, none of the securities in the Collateral Pools was in default or considered to be impaired at December 31, 2008, and the Collateral Pools had adequate sources of liquidity from normal lending under Defendants' securities lending program as of such date.

37.     Defendants, however, have told clients, including, on information and belief, the Plans, that clients are not allowed to fully liquidate investments in Collective Trusts that have loaned securities and invested Collateral in Collateral Pools. Clients who cash out have a portion of their money placed in a separate pool investment pool managed by Defendants, which may or may not ultimately pay clients the full value of their investments. At current asset values (not speculative values based on the fiction that these securities are or were intended to be held to term or that they will pay full value at term), the Plans, thus, have collectively incurred hundreds of millions of dollars in losses.

38.     The Plans suffered these losses because Defendants conducted the securities lending program in a negligent and imprudent manner in violation of their ERISA fiduciary duties and took investments risks (in which Defendants did not share) to maximize their own

income at the expense of the Plans. Defendants invested the Collateral in Collateral Pools that in turn invested in instruments, including mortgage-backed securities, with unusually high risk and unusually long duration, which caused the Collateral Pools to incur substantial losses in comparison to the original value of the Collateral. This, in turn, rendered the Plans liable to make up the shortfall in returning Collateral to borrowers.

39.     By taking unreasonable compensation in connection with such transactions, and taking unreasonable and imprudent risk in the management of Collateral Pools, the State Street Defendants engaged in numerous prohibited transactions with retirement plan assets for the benefit of themselves.

## VI. **THE RELEVANT LAW**

40.     ERISA §502(a)(2), 29 U.S.C. §1132(a)(2), provides, in relevant part, that a civil action for breach of fiduciary duty may be brought by the Secretary of Labor, or a participant, beneficiary or fiduciary of a plan for relief under ERISA §409, 29 U.S.C. §1109.

41.     ERISA §409(a), 29 U.S.C. §1109(a), "Liability for Breach of Fiduciary Duty," provides, in relevant part:

> any person who is a fiduciary with respect to a plan who breaches
> any of the responsibilities, obligations, or duties imposed upon
> fiduciaries by this subchapter shall be personally liable to make
> good to such plan any losses to the plan resulting from each such
> breach, and to restore to such plan any profits of such fiduciary
> which have been made through use of assets of the plan by the
> fiduciary, and shall be subject to such other equitable or remedial
> relief as the court may deem appropriate, including removal of
> such fiduciary.

42.     ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), authorizes individual participants to seek equitable relief from Defendants, including, without limitation, injunctive relief and, as available under applicable law, a constructive trust, restitution, and other monetary relief.

43.     ERISA §§404(a)(1)(A) and (B), 29 U.S.C. §§1104(a)(1)(A) and (B), provide in relevant part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

44.     These fiduciary duties under ERISA §§404(a)(1)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence and are the "highest known to the law." *Donovan v. Bierwith*, 680 F.2d 263, 272 n.2 (2d Cir. 1982). They entail, among other things:

> (a)     The duty to conduct an independent and thorough investigation into, and to continually monitor, the merits of all the investment alternatives of a plan, including, in this case, the investment alternatives of the Collective Investment Funds in which Plan assets were invested;

> (b)     The duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves, including, in this case, the State Street Defendants' personal interests in receiving some of the cash collateral from securities lending; and

> (c)     The duty to disclose and inform, which encompasses: (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries, including,

15

in this case, with respect to the grave risks of securities
lending.

45.     According to DOL regulations and case law interpreting this statutory provision,
in order to comply with the prudence requirement under ERISA §404(a), a fiduciary must show
that: (a) he has given appropriate consideration to those facts and circumstances that, given the
scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to
the particular investment or course of action involved, including the role that the investment or
course of action plays in that portion of the plan's investment portfolio with respect to which the
fiduciary has investment duties; and (b) he has acted accordingly.

46.     Again, according to DOL regulations, "appropriate consideration" in this context
includes, but is not necessarily limited to:

- A determination by the fiduciary that the particular investment or course of
  action is reasonably designed, as part of the portfolio, to further the purposes
  of the plan, taking into consideration the risk of loss and the opportunity for
  return associated with the investment or course of action; and

- Consideration of the following factors as they relate to such portion of the
  portfolio:

  ○ The composition of the portfolio with regard to diversification;

  ○ The liquidity and current return of the portfolio relative to the anticipated
    cash flow requirements of the plan; and

  ○ The projected return of the portfolio relative to the funding objectives of
    the plan.

47.     As set forth herein, the State Street Defendants failed in the discharge of these
duties, and, generally, in their duty to manage the assets of the Plans prudently, loyally, and in
the best interests of the Plans and the Class.

48.    ERISA also prohibits certain transactions with plan involving parties in interest and fiduciaries because of their high potential for abuse. Specifically, ERISA §406 provides as follows:

(a) Transactions between plan and party in interest
Except as provided in section 1108 of this title:
   (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
      (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
      (B) lending of money or other extension of credit between the plan and a party in interest;
      (C) furnishing of goods, services, or facilities between the plan and a party in interest;
      (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
      (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107 (a) of this title.
   (2) No fiduciary who has authority or discretion to control or manage the assets of a plan shall permit the plan to hold any employer security or employer real property if he knows or should know that holding such security or real property violates section 1107 (a) of this title.

(b) Transactions between plan and fiduciary
A fiduciary with respect to a plan shall not—
   (1) deal with the assets of the plan in his own interest or for his own account,
   (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
   (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

49.    As set forth herein, the State Street Defendants violated ERISA §406(a) by causing the Plans to loan their assets to parties in interest, namely the borrowers of loaned securities, for the benefit of the borrowers and Defendants. And State Street Defendants violated ERISA §406(b) by using the Plans' assets to invest in high risk and illiquid instruments through the Collateral Funds to benefit Defendants.

50.     Plaintiff therefore brings this action under the authority of ERISA §502(a)(2) for relief under ERISA §409(a) to recover losses sustained by the Plans arising out of the breaches of fiduciary duties by Defendants for violations under ERISA §404(a)(1).

## VII. CLASS ACTION ALLEGATIONS

51.     **Class Definition**. Plaintiffs bring this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2), and, in the alternative, (b)(3) of the Federal Rules of Civil Procedure on behalf of the Plans and the following class of persons similarly situated (the "Class"):

> All ERISA Plans that invested directly or indirectly in any Collective Trust that invested Collateral in any Collateral Pool, which Collective Trusts and Collateral Pools were managed and offered by the State Street Defendants, between January 1, 2007 and the present (the "Class Period").

52.     **Numerosity**. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that hundreds of ERISA Plans throughout the country invested in the Collective Trusts during the Class Period, and sustained losses as a result of the State Street Defendants' imprudent securities lending activities. For example, Schedule D to the Form 5500 for the S&P 500 Flagship Fund filed by Defendants for that Collective Trust lists over 100 ERISA plans as investors in the fund. The S&P 500 fund is but one of dozens of Collective Trusts offered to the Plans and managed by Defendants that engaged in securities lending.

53.     **Commonalilty**. The claims of Plaintiff and all Class members originate from the same misconduct, breaches of duties and violations of ERISA perpetrated by the Defendants. Proceeding as a class action is particularly appropriate here, because Plan assets are held in

Collective Trusts and/or Collateral Pools managed by the State Street Defendants, where each Plan investor shares in gains and losses on a pro rata basis, and, therefore, Defendants' imprudent actions affected all Plans in the same manner.

54.     Furthermore, common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. The many questions of law and fact common to the Class include:

        a.      Whether Defendants are fiduciaries under ERISA;

        b.      Whether Defendants breached their fiduciary duties under ERISA;

        c.      Whether Defendants failed to provide complete and accurate information to Plans and their participants and beneficiaries when Defendants engaged in risky securities lending activities;

        d.      Whether Defendants' acts proximately caused losses to the Plans and, if so, the appropriate relief to which Plaintiff, on behalf of the Plans and the Class, is entitled;

        e.      Whether Defendants received compensation, direct or indirect, in connection with transactions involving Plan assets, and whether such compensation was reasonable;

        f.      Whether Defendants caused the Plans to engage in prohibited transactions with parties in interest, fiduciaries, and Defendants or their affiliates.

        g.      Whether an affirmative defense to prohibited transactions applies and can be satisfied by Defendants.

55.     **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff seeks relief on behalf of the Plans pursuant to ERISA §502(a)(2), and, thus, Plaintiff's claims on behalf of the Plans are not only typical of, but identical to, a claim under this section brought by any Class member. If cases were brought and prosecuted individually, each of the members of the Class would be required to prove the same claims based upon the same facts, pursuant to the same remedial theories, and would be seeking the same relief.

56.     **Adequacy.** Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and ERISA litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class. Plaintiff has undertaken to protect vigorously the interests of the absent members of the Class.

57.     **Rule 23(b)(1)(A) &(B) Requirements.** Class action status in this action is warranted under Rule 23(b)(1)(A), because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status also warranted under Rule 23(b)(1)(B), because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

58.     **Rule 23(b)(2) Requirements.** Certification under 23(b)(2) is warranted because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

59.     **Rule 23(b)(3) Requirements.** In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

## VIII. CLAIMS FOR RELIEF

### COUNT I
### FAILURE PRUDENTLY AND LOYALLY TO MANAGE PLAN ASSETS

60.     Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

61.     Under Section 3(21) of ERISA, 29 U.S.C. §1002(21), the State Street Defendants were at all relevant times ERISA fiduciaries with respect to the Plans and the invested assets of the Plans.

62.     Under Section 3(38) of ERISA, 29 U.S.C. §1002(38), the State Street Defendants were at all relevant times the Investment Manager of the Plans.

63.     The scope of the fiduciary duties and responsibilities of the State Street Defendants included managing the assets of the Plans.

64.     Defendants were obligated to discharge their duties with respect to the Plans' assets with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

65.     Contrary to their duties and obligations under ERISA, Defendants failed loyally and prudently to manage the assets of the Plans. Specifically, Defendants breached their duties to

21

the Plans and their participants, in violation of ERISA §404(a), by, *inter alia*, (a) exposing Plan assets to excessive levels of risk; and (b) generally failing to invest and manage the assets of the Plans in the manner of a reasonably prudent fiduciary acting under similar circumstances.

66.     Moreover, Defendants failed to conduct an appropriate investigation of the merits of their highly risky and speculative program of securities lending and Collateral investment in light of the particular dangers that this program posed to Plan assets. Such an investigation would have revealed to a reasonably prudent fiduciary the imprudence of investing Plan assets in highly risky, illiquid, long term investments.

67.     As a consequence of Defendants' breaches of fiduciary duties alleged in this Count, the Plans suffered massive losses. Had Defendants discharged their fiduciary duties to prudently invest Plan assets, the losses suffered by the Plans would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plans lost hundreds of millions of dollars of retirement savings.

68.     Pursuant to ERISA §§409, 502(a)(2) and (3), 29 U.S.C. §§1109(a), and 1132(a)(2), Defendants are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## COUNT II
## FOR PROHIBITED TRANSACTIONS INVOLVING PLAN ASSETS

69.     Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

70.     Under Section 3(21) of ERISA, 29 U.S.C. §1002(21), the State Street Defendants were at all relevant times ERISA fiduciaries with respect to the Plans and the invested assets of the Plans.

71.     Under Section 3(38) of ERISA, 29 U.S.C. §1002(38), the State Street Defendants were at all relevant times the Investment Manager of the Plans.

72.     The scope of the fiduciary duties and responsibilities of the State Street Defendants included managing the assets of the Plans.

73.     The State Street Defendants, through the Collective Trusts, engaged in numerous prohibited transactions involving the Plans' assets with parties in interest, which transactions were per se prohibited by Section 406(a) of ERISA, 29 U.S.C. §1106(a). Defendants also engaged in numerous self-dealing transactions in violation of Section 406(b) of ERISA, 29 U.S.C. § 106(b), including acting for the benefit of themselves in managing the Collateral Pools and in and receiving compensation, direct or indirect, from transactions involving Plan assets. Such transactions were not exempted by an individual, class, or statutory exemption.

74.     Pursuant to ERISA §§409, 502(a)(2), and (a)(3), 29 U.S.C. §§1109(a), and 1132(a)(2), the State Street Defendants are liable to restore the losses to the Plans caused by Defendants' violations of Section 406, and to disgorge their compensation and profits thereon, and subject to other equitable relief as appropriate.

## IX. REMEDY FOR BREACHES OF FIDUCIARY DUTIES

75.     Defendants breached their fiduciary duties in that they knew, or should have known, the facts as alleged above, and therefore knew, or should have known, that the securities lending program was imprudent. Defendants also violated ERISA's prohibitions on certain transactions involving plan assets.

76.     ERISA §502(a)(2), 29 U.S.C. §1132(a)(2), authorizes the Secretary of Labor, or a participant, beneficiary or fiduciary of a plan, to bring a civil action for appropriate relief under

ERISA §409, 29 U.S.C. §1109. Section 409 requires "any person who is a fiduciary ... who breaches any of the ... duties imposed upon fiduciaries ... to make good such plan any losses to the plan ...." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate...."

77.     With respect to calculation of the losses to the Plans, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Plans would not have made or maintained their investments in Collective Trusts participating in the challenged securities lending program and, instead, prudent fiduciaries would have invested the Plans' assets prudently and appropriately. In this way, the remedy restores the Plans' lost value and puts the participants in the position they would have occupied had the Plans been properly administered.

78.     Plaintiff, on behalf of the Plans and the Class, is therefore entitled to relief from Defendants in the form of: (a) a monetary payment to the Plans in an amount to be proven at trial based on the principles described above, as provided by ERISA §409(a), 29 U.S.C. §1109(a); (b) injunctive and other appropriate equitable relief to remedy the breaches alleged above, including on order permitting the Plans and the Class to withdraw assets from Collective Trusts, as provided by ERISA §§409(a), 502(a)(2) and (3), 29 U.S.C. §§1109(a), 1132(a)(2); (c) disgorgement of compensation and profits earned thereon as a result of prohibited transactions; (d) reasonable attorney fees and expenses, as provided by ERISA §502(g), 29 U.S.C. §1132(g), the common fund doctrine, and other applicable law; (e) taxable costs and interest on these amounts, as provided by law; and (f) such other legal or equitable relief as may be just and proper.

79.     Under ERISA, each Defendant is jointly and severally liable.

24

## X. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.      A determination that this action is a proper class action and certifying Plaintiff as class representatives under Rule 23 of the Federal Rules of Civil Procedure;

B.      A Declaration that Defendants, and each of them, have breached their ERISA fiduciary duties to the Plans and the Class;

C.      A Declaration that Defendants, and each of them, are not entitled to the protection of ERISA §404(c)(1)(B), 29 U.S.C. §1104(c)(1)(B);

D.      A Declaration that Defendants, and each of them, have violated ERISA §406, 29 U.S.C. §1106;

E.      An Order compelling Defendants to make good to the Plans and the Class all losses resulting from the securities lending program and to restore to the Plans and the Class all profits that the participants and beneficiaries would have made if Defendants had fulfilled their fiduciary obligations;

F.      Imposition of a constructive trust on any amounts by which any Defendants were unjustly enriched at the expense of the Plans and the Class as the result of beaches of fiduciary duty;

G.      Restoration of any losses to the Plans and the Class, allocated among the participants' individual accounts within the Plans and the Class, in proportion to the accounts' losses as required by ERISA;

H.      An Order awarding costs pursuant to 29 U.S.C. §1132(g);

I.      An Order awarding attorney fees pursuant to the common fund doctrine, 29

25

U.S.C. §1132(g), and other applicable law;

      J.     An Order for equitable restitution and other appropriate equitable and injunctive

relief against Defendants; and

      K.     Granting such other and further relief as the Court may deem just and proper.

## XI.   JURY DEMAND

Plaintiff demands trial on all issues so triable.

Dated: April 7, 2009   Respectfully submitted,

_____
Matthew P. McCue
BBO #565319
Law Office of Matthew P. McCue
179 Union Ave.
Framingham, MA 01702
Tel: (508) 620-1166
Fax: (508) 820-3311

Todd M. Schneider
SCHNEIDER WALLACE COTTRELL
BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Brian A. Glasser
Michael L. Murphy
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Tel: (304) 345-6555
Fax: (304) 342-1110

Garrett W. Wotkyns
SCHNEIDER WALLACE COTTRELL
BRAYTON KONECKY LLP
7702 E. Doubletree Ranch Road, Suite 300
Scottsdale, Arizona 85258

Gregory Y. Porter
BAILEY & GLASSER LLP
601 Pennsylvania Ave., NW
Suite 900, South Bldg.
Washington, DC 20004

Todd S. Collins
Shanon J. Carson
Ellen T. Noteware
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3040
Facsmile: (215) 875-4604

*Attorneys for Plaintiffs*