IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FISHMAN HAYGOOD PHELPS WALMSLEY, WILLIS & SWANSON, L.L.P., *and all others similarly situated,*<br><br>Plaintiffs,<br><br>vs.<br><br>STATE STREET CORPORATION, STATE STREET BANK & TRUST COMPANY, STATE STREET BANK & TRUST COMPANY OF NEW HAMPSHIRE, AND STATE STREET GLOBAL ADVISORS,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) CASE NO. 1:09-cv-10533-PBS |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Jeffrey B. Rudman (BBO #433380)
Phillipa J. Gage (BBO #664528)
Manique W. Bloom (BBO #670537)
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Lori A. Martin (*pro hac vice*)
Dawn M. Wilson (*pro hac vice*)
Brad E. Konstandt (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

*Counsel for Defendants State Street
Corporation, State Street Bank & Trust
Company, State Street Bank & Trust
Company of New Hampshire, and State
Street Global Advisors*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF ALLEGED FACTS ..................................................... 5

      A.     The Parties ................................................................ 5

      B.     The Securities Lending Program .............................. 6

      C.     Plaintiff's Claims ................................................... 10

ARGUMENT .......................................................................................... 12

    I.     PLAINTIFF LACKS ARTICLE III STANDING FOR FAILURE TO
SHOW THAT IT HAS SUFFERED SOME ACTUAL INJURY ...................... 12

    II.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER ERISA
SECTIONS 404 AND 406 .................................................................. 15

      A.     The Complaint Fails to Allege Any Actual Damages ............................. 15

      B.     Plaintiff Fails to Plead Adequately That Defendants Violated Any
Fiduciary Duty Under ERISA Section 404 ............................................. 18

           1.     The Alleged Prudence Violations Impermissibly Are Based
Upon Hindsight .......................................................................... 18

           2.     Plaintiff Fails Adequately to Allege That Any State Street
Defendant Violated A Duty of Loyalty to the Fishman Plan ....... 20

      C.     Plaintiff's Claims Based Upon Alleged Violations of Sections
406(a) and 406(b) Fail Because Securities Lending is An Exempt
Activity Under the Act .................................................................... 23

      D.     The Complaint Fails to Allege that State Street Corporation Owes
Fiduciary Duties to the Fishman Plan ................................................ 24

    III.    SSGA IS NOT AN INCORPORATED ENTITY AND IS INCAPABLE OF
BEING SUED .................................................................................... 27

CONCLUSION ....................................................................................... 28

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Adkins v. Unum Provident Corp.*,
  191 F. Supp. 2d 956 (M.D. Tenn. 2002)............................................................. 25

*Albers v. Church of Nazarene*,
  698 F.2d 852 (7th Cir. 1983)........................................................................... 27

*Alves v. Harvard Pilgrim Health Care Inc.*,
  204 F. Supp. 2d 198 (D. Mass. 2002)............................................................. 22

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009).........................................................................1, 15, 22

*Barry v. Trustee of Int'l Ass'n*,
  Civ. A. No. 02-2371, 2006 WL 2507557 (D.D.C. Aug. 29, 2006)........................ 16

*Beatty v. North Central Cos., Inc.*,
  170 F. Supp. 2d 868 (D. Minn. 2001)............................................................. 16

*Beddall v. State Street Bank and Trust Co.*,
  137 F.3d 12 (1st Cir. 1998).......................................................................... 2, 25

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................. 1, 15

*Bendaoud v. Hodgson*,
  578 F. Supp. 2d 257 (D. Mass. 2008)............................................................. 19

*Bender v. Williamsport Area Sch. Dist.*,
  475 U.S. 534 (1986) ................................................................................. 12, 13

*Bingham v. Massachusetts*,
  No. 08-11770, 2009 WL 1259963 (D. Mass. May 6, 2009)................................ 15

*Bogan v. City of Boston*,
  489 F.3d 417 (1st Cir. 2007) ....................................................................... 18

*Bunch v. W.R. Grace & Co.*,
  555 F.3d 1 (1st Cir. 2009)......................................................................... 18, 19

*Bussian v. RJR Nabisco, Inc.*,
  223 F.3d 286 (5th Cir. 2000)......................................................................... 18

*Byars v. The Coca-Cola Co.*,
   No. 1:01-CV-3124, 2004 WL 1595399 (N.D. Ga., Mar. 18, 2004)......................................16

*Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care*,
   433 F.3d 181 (2d Cir. 2005)........................................................................................13

*Chao v. Moore*,
   No. AW-99-1283, 2001 WL 743204 (D. Md. June 15, 2001)......................................16, 20

*Cruz v. Melecio*,
   204 F.3d 14 (1st Cir. 2000) ..........................................................................................2

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
   974 F.2d 270 (2d Cir. 1992)........................................................................................17

*DiFelice v. U.S. Airways, Inc.*,
   497 F.3d 410 (4th Cir. 2007)........................................................................................19

*Dodora Unified Commc'ns, Inc. v. Direct Information Pvt. Ltd.*
   379 F. Supp. 2d 10 (D. Mass. 2005)............................................................................27

*Dupree v. Prudential Ins. Co. of Am.*,
   No. 99-8337-Civ., 2007 WL 2263892 (S.D. Fla. Aug. 10, 2007)..................................16

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279 (2002) ....................................................................................................17

*Fitzgerald v. CBS Broadcasting, Inc.*,
   491 F. Supp. 2d 177 (D. Mass. 2007)..........................................................................27

*Gerzog v. London Fog Corp.*,
   907 F. Supp. 590 (E.D.N.Y. 1995)..............................................................................27

*Gilbert v. Related Mgmt. Co., L.P.*,
   No. 95 CIV. 9610, 1998 WL 99801 (S.D.N.Y. Mar. 4, 1998)......................................22

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS, Inc.*,
   465 F.3d 1123 (9th Cir. 2006)......................................................................................13

*Haber v. Brown*,
   774 F. Supp. 877 (S.D.N.Y. 1991) ..............................................................................27

*Harley v. Minnesota Min. and Mfg. Co.*,
   284 F.3d 901 (8th Cir. 2002)........................................................................................16

*Hecht v. Colorboard Packaging Corp.*,
   856 F. Supp. 184 (S.D.N.Y. 1994) ..............................................................................16

*Henry v. Champlain Enterprises, Inc.*,
  445 F.3d 610 (2d Cir. 2006) ........................................................................ 18

*In re Boston Scientific Corp. ERISA Litig.*,
  254 F.R.D. 24 (D. Mass. 2008) ................................................................... 13

*In re Huntington Bancshares Inc. ERISA Litig.*,
  No. 2:08-cv-0165, 2009 U.S. Dist. LEXIS 9102 (S.D. Ohio Feb. 9, 2009) ........................... 20

*In re McKesson HBOC, Inc. ERISA Litig.*,
  391 F. Supp. 2d 812 (N.D. Cal. 2005) ........................................................ 22

*In re McKesson HBOC, Inc. ERISA Litig.*,
  No. C00-20030, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) ......................... 26

*In re Mutual Funds Inv. Litig.*,
  1:04:md-15864, 2005 WL 3692756 (D. Md. Dec. 6, 2005) ................................. 26

*In re Providian Fin. Corp. ERISA Litig.*,
  No. C 01-05027, 2002 WL 31785044 (N.D. Cal. Nov. 14, 2002) ......................... 26

*In re Sprint Corp. ERISA Litig.*,
  388 F. Supp.2d 1207 (D. Kan. 2004) .......................................................... 27

*In re Xerox Corp. ERISA Litig.*,
  483 F. Supp. 2d 206 (D. Conn. 2007) ......................................................... 22

*Keach v. U.S. Trust Co.*,
  419 F.3d 626 (7th Cir. 2005) ...................................................................... 19

*Kirschbaum v. Reliant Energy, Inc.*,
  526 F.3d 243 (5th Cir. 2008) ...................................................................... 19

*Loren v. Blue Cross & Blue Shield of Mich.*,
  505 F.3d 598 (6th Cir. 2007) ...................................................................... 13

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................... 13

*Microsystems Software, Inc. v. Scandinavia Online, AB*,
  226 F.3d 35 (1st Cir. 2000) ........................................................................ 15

*Molasky v. Principal Mut. Life Ins. Co.*,
  149 F.3d 881 (8th Cir. 1998) ...................................................................... 25

*Moran Vega v. Cruz Burgos*,
  537 F.3d 14 (1st Cir. 2008) ........................................................................ 15

*Murphy v. Social Sec. Admin.*,
  C.A. No. 03-12165, 2006 WL 2691614 (D. Mass. Sept. 19, 2006) ...................................... 16

*Nelson v. Brinson Partners, Inc.*,
  No. 03 C6446, 2004 WL 178180 (N.D. Ill. Jan. 16, 2004) ................................................... 19

*Noa v. Keyser*,
  519 F. Supp. 2d 481 (D.N.J. 2007) ...................................................................................... 19

*O'Neil v. Retirement Plan for Salaried Employees of RKO General, Inc.*,
  37 F.3d 55 (2d Cir. 1994) ..................................................................................................... 22

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) ....................................................................................................... 20, 25

*Ramirez v. Sanchez Ramos*,
  438 F.3d 92 (1st Cir. 2006) .................................................................................................. 13

*Stein v. Smith*,
  270 F. Supp. 2d 157 (D. Mass. 2003) .............................................................................. 24, 25

Federal Statutes

29 U.S.C. § 1002(21)(A) ............................................................................................................. 25

29 U.S.C. § 1104(a)(1)(A) .......................................................................................................... 20

29 U.S.C. § 1104(a)(1)(D) ..................................................................................................... 22, 23

29 U.S.C. § 1106 ....................................................................................................................... 23

29 U.S.C. § 1108(a) ................................................................................................................... 24

29 U.S.C. §§ 1104(a)(1)(A) ........................................................................................................ 18

Federal Rules

Fed. R. Civ. P. Rule 8 ...................................................................................... 1, 4, 15, 16, 26

Fed. R. Civ. P. Rule 12(b)(1) ............................................................................................... 4, 16

Fed. R. Civ. P. Rule 12(b)(6) ............................................................................................... 4, 16

Defendants State Street Corporation, State Street Bank & Trust Company (together with its State Street Global Advisors division), and State Street Bank & Trust Company of New Hampshire, ("Defendants" or "State Street"), submit this memorandum in support of their motion to dismiss for lack of Article III standing and for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

This motion presents a straightforward legal question:  Does a plaintiff who has incurred no investment loss and does no more than conjecture that it may at some future date incur an unquantifiable and theoretical loss state a justiciable claim?  Both Article III of the U.S. Constitution and Rule 8 of the Federal Rules of Civil Procedure require that plaintiffs show that they have suffered an actual injury, and their failure to do so requires that the action be dismissed.

As the Supreme Court recently stated, while Rule 8 does not require "'detailed factual allegations,'" it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  This Complaint does not remotely satisfy the *Iqbal* and *Twombly* pleading standard.

In this case, Plaintiff is a law firm whose retirement plan participates in the American Bar Association Retirement Fund Program.  The investment options offered through the ABA Program are established under the American Bar Association Members/State Street Collective Trust ("ABA Trust").  The ABA Program includes investment options that engage in securities

lending and Plaintiff accepted these options when it elected to participate in the ABA Program.

Securities lending is an investment strategy intended to provide greater returns (by the addition

of securities lending revenue) than an investor would receive from funds that do not lend their

securities.  In this case, the ABA Trust funds ("Collective Trust Funds") loaned the securities

they owned to third parties in exchange for collateral equal to 102% to 105% of the borrowed

securities.  The cash collateral is invested in pools (cash "Collateral Pools") that are managed by

State Street.  Nothing whatsoever is said to be wrong with an investment fund that engages in

securities lending for the purpose of generating incremental investment returns to investors, or

the professional management of the collateral until such time as the borrower returns the funds'

securities.  And, indeed, securities lending has produced positive returns for Collective Trust

Fund investors.  For example, although the Large Cap Growth Equity Fund experienced losses

for the year 2008, securities lending generated income of approximately $500,000.00.[1]

The "harm" that allegedly befell Plaintiff is that the Collateral Pools at the end of 2008

were valued through one accounting convention at $0.93 on the dollar for assets that are valued

at $1.00 per unit through another accounting convention.  Although none of Plaintiff's

transactions in the Collective Trust Funds has resulted in corresponding transactions between the

---

[1] ABA Members/State Street Collective Trust, December 31, 2008 Form 10-K (filed March 27, 2009) at F-38, Exhibit A to the Declaration of Dawn Wilson, dated June 22, 2009 ("Wilson Decl.").  Additionally, the securities lending program generated approximately $3.1 million of net income in the aggregate for all funds that participated in the securities lending program in 2008, and approximately $525,000 of net income in the aggregate for the quarter ending March 31, 2009.  ABA Bar Members/State Street Collective Trust Form S-1 (May 22, 2009) at 32, Wilson Decl., Ex. B.  The other ABA Trust registration statements, dated April 30, 2008, January 23, 2009, and April 17, 2009 are attached at Wilson Decl., Exs. D, E, and F.  The court may appropriately consider the registration statement for Plaintiff's investment in connection with this motion as it is integral to the allegations in the Complaint.  *See Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)"); *Cruz v. Melecio*, 204 F.3d 14, 21 (1st Cir. 2000) ("The jurisprudence of Rule 12(b)(6) requires us to consider not only the complaint, but also matters fairly incorporated within it and matters susceptible to judicial notice").

Collective Trust Funds and the Collateral Pools at prices of less than $1.00 per unit, and

Defendants have been faithfully transacting investments in the Collateral Pools at $1.00 per unit,

Plaintiff nonetheless complains that it might one day be damaged to the tune of 7% in the event

that it sells its investment in the Collective Trust Funds, *and* those funds reduce their positions in

Collateral Pools, *and* Defendants opted to transact investments in the Collateral Pool at $0.93 per

unit rather than $1.00 per unit.  This theoretical 7% is said to be the fruit of recklessness or

breach of duty, but what the recklessness consisted of, or the breach it amounted to, is left

unsaid.

But what is really astonishing about the Complaint is that it does not appear that the

Plaintiff has ever set out to exit from the ABA Program.  Nor does it appear from the Complaint

that Plaintiff has tried to sell its investment in the Collective Trust Funds, or that it realized even

indirectly any damage on transactions between the Collective Trust Funds and the Collateral

Pools, or even that it was told that it was welcome to sell its position in the Collective Trust

Funds, but that any transactions between the Collective Trust Funds and the Collateral Pools

would be transacted at $0.93 on the dollar.  All Plaintiff offers is:  "Defendants, however, have

told clients, including, on information and belief, the Plans, that clients are not allowed to fully

liquidate investments in Collective Trust Funds that have loaned securities and invested

Collateral in Collateral Pools."  (Compl. ¶ 37.)   Hiding behind unspecified information and

belief, Plaintiff seems unable or unwilling to say whether Defendants or anybody else have ever

told *it* that *it* cannot fully liquidate *its* investment in the Collective Trust Funds.  The artful

pleading is not accidental:  the ABA Trust imposes no redemption restrictions from the

Collective Trust Funds by individual plan participants.  Plaintiff's conclusion is that:  "By taking

unreasonable compensation in connection with such transactions, and taking unreasonable and

imprudent risk in the management of Collateral Pools, the State Street Defendants engaged in numerous prohibited transactions with retirement plan assets for the benefit of themselves." (Compl. ¶ 39.)  This vacant, non-specific rhetoric is not the stuff of an ERISA claim or any other claim that this Court should countenance, and supports dismissal for lack of standing under Article III of the U.S. Constitution and for failure to state a claim under Rules 8(a), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

The Complaint is deficient for additional reasons as well.  As detailed in the Form S-1 Registration Statement (www.abaretirement.com) and the Securities Lending Authorization Agreement that accompanied Plaintiff's investment, State Street collects fees for the lending services it provides the Collective Trust Funds.  Though the method for computing those fees was fully disclosed prior to Plaintiff's election to participate in the ABA Program, and Plaintiff acknowledged at the time of its investment that the fees were reasonable, Plaintiff now claims that those fees are unreasonable.  (Compl. ¶¶ 12, 16.)  Additionally, the Complaint assumes that State Street Corporation is an ERISA fiduciary to Plaintiff, though there are no factual allegations suggesting that this Defendant has any fiduciary obligations to Plaintiff.  Finally, notwithstanding corporate disclosures to the contrary, Plaintiff erroneously names State Street Global Advisors as a separate corporate entity, though no incorporation exists and it is incapable of suit in its own name.

## STATEMENT OF ALLEGED FACTS

### A.     The Parties

Plaintiff administers the Fishman Haygood Phelps Walmsley Willis and Swanson, L.L.P.

Profit Sharing Plan ("Fishman Plan"), an ERISA defined contribution plan.  (Compl. ¶ 21.)  The

Fishman Plan invested in collective investment funds (each a "Collective Trust Fund")[2] created

under the ABA Trust, which is registered under the Securities Act of 1933.  (*Id.* ¶¶ 4-5, 11.)

Though Plaintiff does not purport to have invested in any State Street investment vehicle other

than through the ABA Trust, Plaintiff purports to bring this action on behalf of a class of all

ERISA plans (the "Plans") "that invested directly or indirectly in *any* Collective Trust [Fund]

that invested Collateral in any Collateral Pool, which Collective Trust [Funds] and Collateral

Pools were managed and offered by the State Street Defendants, between January 1, 2007 and

the present (the "Class Period")."  (*Id.* ¶ 51) (emphasis supplied).

Four State Street entities are named as defendants in this lawsuit:

- **State Street Bank & Trust Company ("SSBT").**  SSBT is a Massachusetts trust company and wholly-owned subsidiary of State Street Corporation.  Plaintiff alleges that SSBT is the trustee of the Fishman Plan.  (Compl. ¶ 22.)

- **State Street Bank & Trust Company of New Hampshire ("SSNH").**  SSNH is a New Hampshire trust company and a wholly-owned subsidiary of SSBT.  The Complaint alleges that SSNH is the trustee and administrator of the ABA Trust and that it currently operates and administers the "investment options available to plans that participate in the ABA Trust."  (*Id.* ¶ 23.)

- **State Street Corporation ("SSC").**  SSC is a holding company that wholly owns SSBT and other subsidiaries.  (*Id.* ¶ 24.)  Notwithstanding its inclusion in this

---

[2] Plaintiff alleges that it invested in the following Collective Trust Funds:  the Stable Asset Return Fund; Intermediate Bond Fund; Balanced Fund; Large-Cap Value Equity Fund; Large-Cap Growth Equity Fund; Index Equity Fund; Mid-Cap Value Equity Fund; Mid-Cap Growth Equity Fund; Small-Cap Equity Fund; International Equity Fund; 2010 Retirement Date Fund; 2020 Retirement Date Fund; 2030 Retirement Date Fund; and 2040 Retirement Date Fund.  (*See* Compl. ¶ 5.)  Each of these Collective Trust Funds is a separate fund governed by the ABA Trust's Declaration of Trust (Wilson Decl., Ex. H), as well as the Collective Trust Fund's own Declaration (each a "Collective Trust Fund Declaration") (Wilson Decl., Ex. C).

action, the Complaint does not allege that SSC owes any fiduciary obligations to, or provides any management services to the ABA Trust or to Plaintiff.

- **State Street Global Advisors ("SSgA") is a division of State Street Bank and Trust Company.**  Though Plaintiff appears to suggest that SSgA, the investment adviser "for some or all of the Collective Trust [Funds] that State Street Defendants offer and manage" (*Id.* ¶ 25), is a separate legal entity, the offering documents for the ABA Trust note that SSgA is an unincorporated division of one of the other parties to this case.[3]

## B.    The Securities Lending Program

Securities lending is an investment practice, selected by Plaintiff and other retirement plans, in order to seek higher returns than would be achieved through investment in funds that do not lend their securities.  (Compl. ¶ 3.)  Securities lending operates in the following manner: When Plaintiff invested in the Collective Trust Funds, State Street used its money to purchase securities for the Funds selected by Plaintiff.[4]  Then, when State Street engages in "securities lending," it takes those securities and lends them to people or companies who are known as "borrowers."  The borrowers give cash to State Street to hold so that it has some assurance that the borrowers will return the securities, usually between 102% and 105% of the value of the securities loaned.  *See* Compl. ¶¶ 2, 7; *see also* Form S-1/A (Jan. 23, 2009) at 26, Wilson Decl., Ex. E; Form S-1/A (Apr. 17, 2009) at 28, Wilson Decl., Ex. F.  State Street then invests the cash (or "collateral") in a "Collateral Pool," which, as discussed in the ABA Trust offering documents, is managed by State Street.  *See* Compl. ¶ 7; Form S-1/A (Jan. 23, 2009) at 27, Wilson Decl., Ex. E; Form S-1/A (Apr. 17, 2009) at 29, Wilson Decl., Ex. F.  The Collateral

---

[3] ABA Members/State Street Collective Trust Form S-1/A (Apr. 30, 2008) at 1, 71-72, Wilson Decl., Ex. D; ABA Members/State Street Collective Trust Form S-1/A (Jan. 23, 2009) at 1, 86-87, Wilson Decl., Ex. E; ABA Members/State Street Collective Trust Form S-1/A (Apr. 17, 2009) at 1, 92-93, Wilson Decl., Ex. F.

[4] Form S-1/A (Apr. 30, 2008) at 1-2, Wilson Decl., Ex. D; Form S-1/A (Jan. 23, 2009) at 1-2, Wilson Decl., Ex. E; Form S-1/A (Apr. 17, 2009) at 1-2, Wilson Decl., Ex. F.

Pool in turn invests its assets in various securities – primarily fixed income investments.[5]

Income earned from the cash Collateral Pool is shared between State Street and the Collective

Trust Funds (Compl. ¶ 8),[6] thus enhancing the rate of return of the Collective Trust Funds that

lent their securities.[7]

A description of the securities lending program – including applicable investment

guidelines, fees, and the allocation of proceeds – is set forth in documents that State Street

provided to the Fishman Plan.  The Declaration of Trust for the ABA Trust expressly

contemplates and authorizes the Collective Trust Funds to engage in securities lending.[8]  The

American Bar Retirement Association ("ABRA") also consented to the ABA Trust's

engagement of SSBT to lend securities for the Collective Trust Funds.[9]  The Securities Lending

Authorization Agreement ("Agreement") provides that SSBT may invest the cash collateral in

the Collateral Pools (or other collective investment funds to which SSBT provides services), and

---

[5] Fund Declarations and Amended and Restated Investment Policy Guidelines for Quality Trust for SSgA Funds Trust Fund (Fund Declaration effective Oct. 10, 2008, and Amended Apr. 1, 2009, Amended and Restated Investment Policy Guidelines Apr. 1, 2009), Super Collateral Fund (Fund Declaration effective Sept. 1, 2004, Amended and Restated Investment Policy Guidelines Apr. 1, 2009), and Quality D Short-Term Investment Fund (Fund Declaration effective Dec. 15, 1995 and Amended and Restated Investment Policy Guidelines April 15, 2009) (together, "Investment Policy Guidelines for Collateral Pools"), Wilson Decl., Ex. G.  The Investment Policy Guidelines for Collateral Pools are attached to or are part of the Fund Declarations establishing each of the Collateral Pools.

[6] *See* Form S-1/A (Apr. 30, 2008) at 57, Wilson Decl., Ex. D; Form S-1/A (Jan. 23, 2009) at 79, Wilson Decl., Ex. E; Form S-1/A (Apr. 17, 2009) at 84, Wilson Decl., Ex. F.

[7] *See, e.g.*, Form S-1 (May 22, 2009) at 32, Wilson Decl., Ex. B ("In 2008, the securities lending program generated approximately $3.1 million of net income in the aggregate for all Funds that participate in the securities lending program.  For the quarter ending March 31, 2009, the aggregate net income accruing to the Funds participating in the securities lending program was approximately $525,000").

[8] The Trustee has the power "to lend any securities and to secure the same in any manner. . . . "  ABA Members/State Street Collective Trust Declaration of Trust (Dec. 5, 1991) at 14, Wilson Decl., Ex. H; ABA Members/State Street Collective Trust Amendment to Declaration of Trust (effective Dec. 1, 2004) at 2, Wilson Decl., Ex. H.

[9] Securities Lending Authorization Agreement Between SSBT as Trustee of the ABA Trust and SSBT (Jan. 1, 2004) at § 21, Wilson Decl., Ex. I.

that SSBT will receive a fee for managing the Collateral Pools.[10]  The Agreement further

provides that all proceeds from the investment of cash collateral or any fee income from the

securities lending activities will be allocated equally between the ABA Trust and SSBT, after

deducting the portion payable to the borrower and any other expenses payable to SSBT under the

Agreement.[11]

State Street invests the collateral for securities lending in such high quality instruments as

U.S. Treasury bills, notes and bonds, corporate debt obligations of U.S. and foreign companies,

mortgage-backed securities, asset-backed securities, and repurchase agreements.[12]  Like assets

held by money market funds, the assets owned by the Collateral Pools have high credit quality,

though these securities may have longer average duration than money market assets, meaning

that they may mature in periods exceeding one year.[13]  And, like money market funds, the

Collateral Pools have historically valued their existing assets using an amortized cost pricing

method, which means that an asset is valued at initial issuance, plus or minus any interest

payments, discounts or impairments.[14]  Money market funds and the Collateral Pools use this

accounting convention in order to maintain stable unit prices of $1.00 and are required to reflect

accurately the underlying investments' full value at term.  (Compl. ¶ 31.)  Alternative accounting

conventions, such as mark-to-market accounting, assign values to assets based upon the current

market price of the assets.  Mark-to-market accounting typically is not utilized by stable value

---

[10] Agreement at § 9; Schedule A to the Agreement at § 3, Wilson Decl., Ex. I.

[11] Agreement at § 9; Schedule A to the Agreement at § 1, Wilson Decl., Ex. I.; see also Compl. ¶ 8; Form S-1/A (Apr. 30, 2008) at 57, Wilson Decl., Ex. D; Form S-1/A (Jan. 23, 2009) at 79, Wilson Decl., Ex. E; Form S-1/A (Apr. 17, 2009) at 84, Wilson Decl., Ex. F.

[12] See Investment Guidelines for Collateral Pools, Wilson Decl., Ex. G.

[13] Id.

[14] State Street Bank and Trust Company Quality Funds for Short-Term Investment Declaration of Trust (Jan. 25, 1995) at 6, section 4.03, Wilson Decl., Ex. J.  The Declaration of Trust for State Street Bank and Trust Company Quality Funds for Short-Term Investment was amended and restated on May 26, 2009.

products, such as the Collateral Pools, because they do not reflect the investments' value at term and respond to short-term fluctuations in the market. (*See* Compl. ¶ 31.)

The unprecedented liquidity crisis now facing the capital markets, which commenced in the latter half of 2007, has produced valuation challenges for assets subject to mark-to-market accounting. Certain assets in the Collateral Pools – for example, intermediate-term high credit quality asset backed securities – now face downward pressure on their market price, which could erode the unit price of the Collateral Pools if valued on a mark-to-market basis. Although State Street does not use the mark-to-market accounting convention to determine the transaction price in the Collateral Pools, it appropriately disclosed to investors that mark-to-market accounting would have produced a unit price for the Collateral Pools of $0.93 per unit at the end of 2008. (*See* Compl. ¶ 11.)

State Street transacts purchases and sales between the ABA Collective Trust Funds and the Collateral Pools at a constant price of $1.00 per unit and not under the highly fluid mark-to-market valuation.[15] As such, investors who redeem units of a Collective Trust Fund, including Plaintiff, have not incurred losses from the Collective Trust Funds' investment in the Collateral Pools.[16]

---

[15] Form S-1/A (Jan. 23, 2009) at 27, Wilson Decl., Ex. E; Form S-1/A (Apr. 17, 2009) at 29, Wilson Decl., Ex. F.

[16] Form S-1/A (Jan. 23, 2009) at 27, Wilson Decl., Ex. E; Form S-1/A (Apr. 17, 2009) at 11 fn.(a), 29, Wilson Decl., Ex. F. The Collective Trust Funds reflect valuations based upon the amortized cost basis as well as mark-to-market valuations. *See* ABA Members/State Street Collective Trust, December 31, 2008 Form 10-K (filed March 27, 2009) at 108-109, Wilson Decl., Ex. A. Reflecting the theoretical potential for loss in the Collective Trust Funds, the ABA Trust noted: "These unrealized losses could reverse, in whole or in part, over time to the extent that principal is eventually recovered on maturities or higher prices are realized upon sale of the underlying securities . . ." and the Collective Trust Funds "have continued to value their investments in the [Collateral Pools] for purposes of Participant transactions at the amortized-cost based value used by the [Collateral Pools] for daily transactions. Accordingly, actual returns experienced by Participants in the [Collective Trust Funds] based on net asset values for transaction purposes do not reflect these unrealized losses." *Id.* at 109, Wilson Decl., Ex. A.

The ABA Trust also continues to allow unlimited redemptions from the Collective Trust

Funds by participants in the Fishman Plan.[17]  Although Plaintiff speculates on information and

belief – but notably not from its own experience as an investor – that "clients are not allowed to

fully liquidate investments in Collective Trust [Funds] that have loaned securities and invested

Collateral in Collateral Pools" (Compl. ¶ 37), the disclosure documents governing the ABA

Trust plainly note that there are no restrictions on withdrawals on investors such as Plaintiff.

The Form S-1, dated May 22, 2009, for example, states:  "no limitations are being imposed upon

redemptions by Participants in the Program," and "no plan sponsor[ ] initiated withdrawal

decisions are being limited."[18]

## C.     Plaintiff's Claims

The Complaint brings two claims, neither of which alleges actual harm.  Count I alleges

that Defendants breached their duties of prudence and loyalty, in violation of ERISA § 404(a),

by "(a) exposing Plan assets to excessive levels of risk; and (b) generally failing to invest and

manage the assets of the Plans in the manner of a reasonably prudent fiduciary."  (Compl. ¶ 65.)

While Plaintiff laments the theoretical impact of mark-to-market accounting on the valuation of

the Collateral Pools, the Complaint includes no allegations that Defendants' decision to invest in

the Collateral Pools deviated from appropriate standards of care or caused them harm.  Although

the Complaint repeatedly avers that the securities in the Collateral Pools are currently "high-risk"

and "illiquid," it contains no substantive allegations relating to the Defendants' investment

diligence and decision-making at the time of the investment in those securities.  Likewise, the

---

[17] Form S-1 (May 22, 2009) at 33, Wilson Decl., Ex. B.

[18] Form S-1 (May 22, 2009) at 33, Wilson Decl., Ex. B; *see also* Form S-1/A (Apr. 17, 2009) at 29, Wilson Decl., Ex. F (stating that withdrawals by Collective Trust Funds from participation in the securities lending program "other than in the ordinary course by a Participant or Employer" will be subject to limitations).

Complaint contains no factual allegations relating to disloyalty, instead concluding that State Street's earnings for managing the Collateral Pools is unfair because investment losses in the Collateral Pools are borne by the investors alone.  (Compl. ¶¶ 8, 11, 35.)  Of course, State Street disclosed its compensation arrangement to Plaintiff prior to its election to join the ABA Program. Count II alleges that Defendants violated the prohibited transaction rules of ERISA §§ 406(a) and (b).  Its allegations are entirely conclusory, noting that Defendants violated Section 406(a) by loaning Fund assets "to parties in interest, namely the borrowers of loaned securities" (Comp. ¶ 49), though the identification of loaned assets and the allegedly affiliated borrower is left to the imagination.

Lest the allegation prove to be untrue, however, Plaintiff offers the conclusory allegation that Defendants "engaged in numerous prohibited transactions involving the Plans' assets with parties in interest."  (Compl. ¶ 73.)  Plaintiff's allegations with respect to Defendants' violations of Section 406(b) equally lack factual context.  Yet again, any self-dealing transaction remains non-specific.

Most importantly, Plaintiff has not suffered any alleged loss from its investment in the ABA Program as a result of securities lending activity.  The Complaint does not allege that Plaintiff has either purchased or sold shares of the Collective Trust Funds in circumstances in which the Collective Trust Funds were forced to make transactions in the Collateral Pools at less than $1.00 per unit.  To the contrary, (a) none of the securities in the Collateral Pools are in default or are impaired (*see* Compl. ¶ 36); (b) the Collateral Pools have adequate sources of liquidity from normal lending under the securities lending program (*id.*); and (c) Plaintiff cannot state that the Collective Trust Funds will not be paid the full $1.00 per unit value of their investment (*id.* ¶ 37).

Plaintiff's assertion of "injury" appears to be premised solely upon surmise that a valuation methodology not employed by State Street for the Collateral Pools suggests that Plaintiff might incur losses if it sold its investment in the Collective Trust Funds and State Street refused to transact business at $1.00 per share for any corresponding redemptions by the Collective Trust Funds from the Collateral Pools.  (Compl. ¶¶ 11, 32.)  Notwithstanding the fact that Plaintiff has incurred no actual losses, the Fishman Plan seeks hundreds of millions of dollars in damages because some theoretical but nonspecific future event might subject investors in the Collective Trust Funds to a 7% "loss" in the Collateral Pools, which is the difference in valuation of two different accounting methodologies.  (Compl. ¶¶ 31, 33-37.)

## ARGUMENT

## I.   PLAINTIFF LACKS ARTICLE III STANDING FOR FAILURE TO SHOW THAT IT HAS SUFFERED SOME ACTUAL INJURY

Article III of the U.S. Constitution requires that a party seeking to invoke the authority of the federal courts "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant."  *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 542 (1986) (internal quotation marks omitted).  The requirement of an actual injury that may be redressed by the court assures that the legal question presented to the court "will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action."  *Id.*

The elements of Article III must be met even where statutory standing pursuant to ERISA is satisfied.  *See Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606 (6th Cir. 2007); *Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care*, 433 F.3d 181, 199 (2d Cir. 2005).  In order to meet this obligation, the party invoking federal jurisdiction – the Plaintiff in this action – bears the burden of establishing that (a) it has suffered

an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical[;]" (b) the injury is fairly traceable to the conduct of the defendant; and (c) it must be "likely" as opposed to "speculative" that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Ramirez v. Sanchez Ramos*, 438 F.3d 92, 97 (1st Cir. 2006).

Though these requirements are an indispensable part of Plaintiff's case, the Complaint here fails to allege facts showing that Plaintiff has suffered any injury at all.  It is of no moment whether Plaintiff sues individually or on behalf of a putative class of ERISA plans.  Plaintiff must establish individual standing to proceed with this action.  *See In re Boston Scientific Corp. ERISA Litig.,* 254 F.R.D. 24, 32 (D. Mass. 2008) ("Merely because Plaintiffs claim that they are suing on behalf of the respective ERISA plans does not change the fact that they must establish individual standing") (quotation omitted); *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS, Inc.*, 465 F.3d 1123, 1127 (9th Cir. 2006); *Cent. States*, 433 F.3d at 200 ("[A]n ERISA Plan participant or beneficiary must plead a direct injury in order to assert claims on behalf of a Plan").

Read as a whole, the Complaint includes no allegation of loss.  Though Plaintiff plainly asks for money (Compl. ¶¶ 68, 74; *see also* ¶¶ 17, 35, 37, 78), the inclusion of a mere *ad damnum* clause is not itself sufficient to confer standing.  Here, for example, the Complaint nowhere alleges that Plaintiff has suffered a loss.  It does not appear that Plaintiff has ever set out to sell its investment in the ABA Collective Trust Funds, or realized *even indirectly* any damage on transactions between the Collective Trust Funds and the Collateral Pools.  Nor does it appear that Plaintiff was told that *it* was welcome to exit the ABA Program, but that any transactions between the ABA Collective Trust Funds and the Collateral Pools would be transacted at $0.93

on the dollar.  All that Plaintiff offers is:  "Defendants, however, have told clients, including, on information and belief, the Plans, that clients are not allowed to fully liquidate investments in Collective Trusts that have loaned securities and invested Collateral in Collateral Pools." (Compl. ¶ 37.)  This allegation is woefully deficient against the standing requirements of Article III, as it includes no allegation that Defendants or anyone else has ever told Plaintiff that *it* cannot exit the ABA Program, or that *its* decision to exit the Program would result in transactions between the Collective Trust Funds and Collateral Pools at $0.93 per unit rather than $1.00 per unit.

This deficiency is not happenstance.  All of the public disclosures are directly contrary to the claim of loss that Plaintiff conjectures.  Notably, all purchases and redemptions between the Collective Trust Funds and the Collateral Pools have been effected at $1.00 per unit, none of the securities that the Collateral Pools hold has defaulted, and participant withdrawals are not limited.[19]  The absence of an actual injury-in-fact requires that the Court dismiss the action for lack of subject matter jurisdiction.  *Microsystems Software, Inc. v. Scandinavia Online, AB*, 226 F.3d 35, 39 (1st Cir. 2000) ("Because standing is a *sine qua non* to the prosecution of a suit in a federal court, the absence of standing sounds the death knell for a case"); *Bingham v. Massachusetts*, No. 08-11770, 2009 WL 1259963, at *1 (D. Mass. May 6, 2009) ("Because the plaintiffs have not shown that they have standing to bring the claims they assert, this Court lacks subject matter jurisdiction over the complaint and it must be dismissed").

---

[19] *See* Compl. ¶ 36; Form S-1/A (Jan. 23, 2009) at 27, Wilson Decl., Ex. E; Form S-1/A (Apr. 17, 2009) at 29, Wilson Decl., Ex. F.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER ERISA SECTIONS 404 AND 406

Under Fed. R. Civ. P. Rule 8, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible on its face*." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis supplied). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," and "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*.[20] The Complaint here fails to plead a plausible claim of injury, alleging no facts showing that Defendants injured Plaintiff, or otherwise breached any fiduciary duties under ERISA (a) in the decision to lend securities; (b) in the decision to invest in the high quality assets that State Street purchased for the Collateral Pools; or (c) in the selection of SSgA to manage the Collateral Pools. Plaintiff's "naked assertions devoid of further factual enhancement" are now plainly insufficient under Rule 8. *Id.* (quoting *Twombly*, 550 U.S. at 557); *see also Moran Vega v. Cruz Burgos*, 537 F.3d 14, 20 (1st Cir. 2008) (the Court is not obliged to credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like"); *Murphy v. Social Sec. Admin.*, C.A. No. 03-12165, 2006 WL 2691614, at *1 (D. Mass. Sept. 19, 2006) ("[a] court should eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets").

### A.   The Complaint Fails to Allege Any Actual Damages

The absence of actual loss is a statutory basis for dismissal as well as a Constitutional deficiency under Article III. *See Harley v. Minnesota Min. and Mfg. Co.*, 284 F.3d 901, 905 (8th Cir. 2002) ("To recover, plaintiffs must prove a breach of this fiduciary duty and loss to the Plan"); *Dupree v. Prudential Ins. Co. of Am.*, No. 99-8337-Civ., 2007 WL 2263892, at *37 (S.D.

---

[20] In *Iqbal*, 129 S. Ct. 1937, the Supreme Court extended the holding of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (to survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face), to all federal civil actions.

Fla. Aug. 10, 2007) (plaintiff "bear[s] the burden of proving each element of a breach of fiduciary duty, including that the alleged breach caused a loss"); *Chao v. Moore*, No. AW-99-1283, 2001 WL 743204, at *5 (D. Md. June 15, 2001) ("[t]o establish a claimed breach of fiduciary duty, an ERISA plaintiff must prove a breach of a fiduciary duty and a prima facie case of loss to the plan").  The failure to allege a loss suffered by the Fishman Plan, thus, independently supports dismissal of the action pursuant to Rule 8 and Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  *See Byars v. The Coca-Cola Co.*, No. 1:01-CV-3124, 2004 WL 1595399, at *7-8 (N.D. Ga. Mar. 18, 2004) (dismissing claim for breach of fiduciary duty "because [plaintiffs' complaint] fails to set forth facts that, if proven, would establish a loss to the plan, a pre-requisite to relief under ERISA"); *Hecht v. Colorboard Packaging Corp.*, 856 F. Supp. 184, 190 (S.D.N.Y. 1994) (dismissing § 404 claim "for failure to prove the necessary connection between the trustee's breach of fiduciary duty and *actual losses* incurred by the pension plan") (emphasis added).

There is no sense in which the damages that Plaintiff seeks in this action are remotely quantifiable, much less "reasonably quantifiable" as required by the Act.  *Barry v. Trustee of Int'l Ass'n*, Civ. A. No. 02-2371, 2006 WL 2507557, at *9 (D. D.C. Aug. 29, 2006) (under ERISA § 409, the plaintiff must "establish that it has suffered some *reasonably quantifiable amount of damage*") (emphasis added); *Beatty v. North Central Cos., Inc.*, 170 F. Supp. 2d 868, 877 (D. Minn. 2001) ("Plaintiffs cannot rest their [ERISA fiduciary duty] claim on mere speculative harm as they have attempted to do here"); *cf. Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 279 (2d Cir. 1992) (analogizing breach of fiduciary duty under ERISA to common law fraud claims, under which speculative damages are insufficient).

Moreover, this case presents the very real risk that Plaintiff will receive a double recovery, representing full returns on the Collective Trust Funds' investment in the Collateral Pools, and a *supplemental windfall* for the theoretical 7% "loss" to the Collective Trust Funds. As noted above at page 8, the mark-to-market accounting convention responds to short-term fluctuations in the market.  These short-term fluctuations can be observed in a mark-to-market valuation of the Collateral Pools even in the period since Plaintiff initiated this action.  Although Plaintiff complains that the 2008 mark-to-market valuation of the Collateral Pools was $0.93 per unit (Compl. ¶¶ 11, 32), as of April 30, 2009, a mark-to-market valuation of the Collateral Pools was $0.95.[21]  It is no more accurate to assume that Plaintiff has been injured by the short-term fluctuation that produced $0.93 per unit, than it is to assume that Plaintiff has experienced a gain when recent short-term fluctuation produced a mark-to-market valuation of $0.95 per unit.  The short-term fluctuations produce speculative predictions of "damages" because they do not necessarily reflect the underlying investments' full value at term, or the price at which the Collective Trust Funds will transact purchases and sales in the Collateral Pools.

For this reason, and in a variety of contexts, the courts have rejected claims for potential damages so as to avoid the likelihood that plaintiffs will receive double recovery.  *See, e.g., EEOC v. Waffle House, Inc.*, 534 U.S. 279, 296 (2002) ("it goes without saying that the courts can and should preclude double recovery") (citation omitted); *Bogan v. City of Boston*, 489 F.3d 417, 425 (1st Cir. 2007) ("the law abhors duplicative recoveries") (citation omitted).  This same principle applies with full force to the ERISA claims asserted in this action.  *See Henry v. Champlain Enterprises, Inc.*, 445 F.3d 610, 624 (2d Cir. 2006) ("the aim of ERISA is to make the plaintiffs whole, but not to give them a windfall") (citation omitted).

---

[21] *See* Form S-1 (May 22, 2009) at 33, Wilson Decl., Ex. B (based upon an average net asset value).

**B.      Plaintiff Fails to Plead Adequately That Defendants Violated Any Fiduciary Duty Under ERISA Section 404**

Read as a whole, the Complaint cannot support an inference that Defendants breached their obligations under Section 404 because it identifies no manner in which State Street acted either imprudently or without the requisite loyalty.  ERISA §§ 404(a)(1)(A) and (B) require that a fiduciary discharge its duties with respect to a plan "solely in the interest of participants and beneficiaries," and with "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. §§ 1104(a)(1)(A) and (B); *see Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 7 (1st Cir. 2009).  Like much of the Complaint, the factual basis for concluding that State Street acted imprudently or without the requisite loyalty is left to conjecture and the Complaint nowhere pleads the manner in which Defendants' actions breached this standard.

**1.      The Alleged Prudence Violations Impermissibly Are Based Upon Hindsight**

To allege a breach of the duty of prudence under ERISA § 404, Plaintiff must plead facts sufficient to demonstrate that a fiduciary, at the time it engaged in the challenged transactions, failed to employ reasonable methods to investigate the merits of an investment.  *Henry,* 445 F.3d at 618; *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 299 (5th Cir. 2000).  Allegations that Defendants were imprudent must be based upon the "circumstances then prevailing," and events that occur subsequent to the transaction – such as the later performance of the investment – cannot form the basis of a claim.  *See Bunch*, 555 F.3d at 7 (the fiduciary's actions must be "viewed from the perspective of the time of the challenged decision" and "[t]he test of prudence – the Prudent Man Rule – is one of *conduct*, and not a test of the result of performance of the

- 18 -

investment") (emphasis in original).[22]  ERISA's fiduciary duty of care "requires prudence, not prescience."  *Keach v. U.S. Trust Co.*, 419 F.3d 626, 638 (7th Cir. 2005) (quotation omitted).

The Complaint alleges that Defendants "fail[ed] to prudently manage the Collateral Pools by failing to use very high quality, liquid investments" and "fail[ed] to manage the asset liability durational differences."  (Compl. ¶ 35.)  The Complaint, however, fails to offer any factual allegations to support the conclusion and, in particular, contains no allegations relating to Defendants' conduct *at the time Defendants invested the Collateral Pool assets*.  Plaintiff's assertion that Defendants were imprudent because the Collateral Pools invested in "high-risk, illiquid" instruments is premised entirely upon an ex post allegation that the market for the Collateral Pools' securities *has become* illiquid and the high quality instruments Defendants purchased may now appear "risky."  (Compl. ¶ 11.)  Fiduciary standards are not measured in hindsight.  *Bunch*, 555 F.3d at 7 ("whether a fiduciary's actions are prudent cannot be measured in hindsight").[23]  Any suggestion that Defendants breached their fiduciary obligations because current markets are significantly different than they were at the time of the original investment is insufficient under Section 404.  *See Chao v. Moore*, No. AW-99-1283, 2001 WL 743204, at *5 (D. Md. June 15, 2001) ("a fiduciary's actions must be judged by the facts reasonably known at

---

[22] *See also Nelson v. Brinson Partners, Inc.*, No. 03 C6446, 2004 WL 178180, at *4 (N.D. Ill. Jan. 16, 2004) ("the question is whether the investment decision was prudent at the time it was made, not months or years later") (internal quotation marks omitted); *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 253 (5th Cir. 2008) ("the test of prudence is one of conduct, not results").

[23] *See also Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 271 (D. Mass. 2008); *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 424 (4th Cir. 2007); *Noa v. Keyser*, 519 F. Supp. 2d 481, 492 (D.N.J. 2007) ("Hindsight cannot play a role in determining whether a fiduciary's actions were prudent") (quotation omitted).

the time of the challenged investment action and not upon subsequent events") (citation

omitted).[24]

### 2.   Plaintiff Fails Adequately to Allege That Any State Street Defendant Violated A Duty of Loyalty to the Fishman Plan

To allege a breach of the duty of loyalty under Section 404, a Complaint must plead facts

showing that a fiduciary failed to act "solely in the interest of the participants and beneficiaries."

29 U.S.C. § 1104(a)(1)(A); *see Pegram v. Herdrich*, 530 U.S. 211, 223 (2000).  Although the

Complaint includes conclusory assertions that Defendants' actions were "self-serving" and

"disloyal" (Compl. ¶¶ 1, 15; *see id.* ¶¶ 38, 65), the factual allegations all relate to a *potential*

conflict of interest, and identify no actual decision that was made in Defendants' interest rather

than the interests of investors in the Collective Trust Funds.  Moreover, to the extent that the

Complaint identifies potentially self-serving actions, the challenged conduct was disclosed prior

to Plaintiff's decision to participate in the ABA Program and State Street is not alleged to have

acted inconsistently with those disclosures.

Plaintiff's disloyalty allegations are based upon a single theme:  State Street's

compensation for managing the cash Collateral Pool is based upon a percentage of the returns on

the Pool.  Though both parties split the benefits from the earnings, Plaintiff complains that State

Street does not share in the investment losses (Compl. ¶¶ 8, 14, 32), except to the extent that it

receives no payment for managing the Pool in circumstances in which the losses wipe out the

earnings.   State Street's compensation structure, of course, is fully disclosed in the offering

statement for the ABA Trust, and Plaintiff elected to invest in the collective investment funds

---

[24] *Accord In re Huntington Bancshares Inc. ERISA Litig.*, No. 2:08-cv-0165, 2009 U.S. Dist. LEXIS 9102, at *22-23, 26-27 (S.D. Ohio Feb. 9, 2009) ("Defendants cannot be held to a standard that would require them to predict the future of the financial markets so as not to breach their fiduciary duties under ERISA").

offered through the ABA Trust with full disclosure regarding their participation in securities lending and the manner in which State Street would be compensated for its services.[25]  Two disclosures illustrate this point.  *First*, the Prospectus described the compensation plan for securities lending stating, in particular, that State Street was entitled to share the returns generated on the Collateral Pools.[26]  *Second*, the Prospectus disclosed that losses from investments in the Collateral Pool would be borne by the Collective Trust Funds into which Plaintiff invested.[27]  The detailed disclosure is accompanied by the following acknowledgement, which Plaintiff accepted prior to investment in the ABA Program:  "Each Employer, by electing to participate in the Program, agrees to the fees payable to State Street Bank . . . as described in this Prospectus *and that such fees are reasonable compensation for the services performed by State Street Bank . . . for the Program.*"[28]

Notwithstanding its prior acknowledgement, Plaintiff now contends that the compensation structure for which it bargained nonetheless creates a *potential* for a conflict of interest because losses may not be shared equally as between Plaintiff and State Street.  Thus, the Complaint asserts (Compl. ¶¶ 1, 12, 15, 38), Defendants might choose to act against Plaintiff's

---

[25] Form S-1/A (Apr. 30, 2008) at 57, Wilson Decl., Ex. D; Form S-1/A (Jan. 23, 2009) at 79, Wilson Decl., Ex. E; Form S-1/A (Apr. 17, 2009) at 84, Wilson Decl., Ex. F ("For the purpose of achieving income, the Managed Funds, the Index Equity Fund and the Retirement Date Funds may lend a portion of their portfolio securities to brokers, dealers and other financial institutions . . . .  State Street Bank administers the securities lending activities of the respective Funds.  A portion of the income generated upon investment of cash collateral is remitted to the borrowers of securities, and the remainder, if any, is allocated between the Fund lending the securities and State Street Bank in its capacity as lending agent").  *See also* Schedule A to Agreement, Wilson Decl., Ex. I.

[26] Form S-1/A (Apr. 30, 2008) at 57, Wilson Decl., Ex. D; Form S-1/A (Jan. 23, 2009) at 79, Wilson Decl., Ex. E; Form S-1/A (Apr. 17, 2009) at 84 (*supra* n.28), Wilson Decl., Ex. F.  *See also* Schedule A to Agreement at §§ 1, 3, Wilson Decl., Ex. I.

[27] Form S-1/A (Jan. 23, 2009) at 27, Wilson Decl., Ex. E; Form S-1/A (Apr. 17, 2009) at 29, Wilson Decl., Ex. F.

[28] Form S-1/A (Apr. 30, 2008) at 84, Wilson Decl., Ex. D; Form S-1/A (Jan. 23, 2009) at 102, Wilson Decl., Ex. E; Form S-1/A (Apr. 17, 2009) at 110, Wilson Decl., Ex. F.  (Emphasis supplied.)

interests and in their own.  The Complaint does not adequately allege that Defendants ever placed their interests over those of Plaintiff, and identifies no action consistent with this conclusion.  Plaintiff's allegations amount to nothing "more than the mere possibility of misconduct."  *Iqbal*, 129 S. Ct. at 1950.

A fiduciary, however, need not avoid all *potential* conflicts so long as the conduct at issue does not violate a relevant duty.  *See In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 834-35 (N.D. Cal. 2005) (rejecting the assertion that "fiduciaries face liability for merely creating the *potential* for a conflict of interest") (italics in original); *In re Xerox Corp. ERISA Litig.*, 483 F. Supp. 2d 206, 218-19 (D. Conn. 2007) ("the cognizable claim with respect to any alleged conflict of interest is not that the fiduciary is subject to a conflict of interest, but rather that in discharging his or her duties under a Plan, the fiduciary breached his or her duty of loyalty").  Thus, to state a claim for the breach of the duty of loyalty, Plaintiff must allege that the Defendants *actually engaged* in disloyal conduct.  *See Iqbal*, 129 S. Ct. at 1949, 1950 (Rule 8 requires that a complaint "show[] that the pleader is entitled to relief").  Plaintiff has not done so.

To the contrary, State Street's disclosure of the compensation structure that Plaintiff now challenges refutes Plaintiff's central premise that State Street breached duties to Plaintiff through receipt of the disclosed compensation.  *See Gilbert v. Related Mgmt. Co., L.P.*, No. 95 CIV. 9610, 1998 WL 99801, at *7 (S.D.N.Y. Mar. 4, 1998) (holding that "[b]ecause [the defendant] merely applied the Plan's provisions, plaintiff cannot demonstrate any conflict of interest," even where plaintiff disagreed with the defendant's interpretation of the plan) (relying on 29 U.S.C. § 1104(a)(1)(D)); *cf. Alves v. Harvard Pilgrim Health Care Inc.*, 204 F. Supp. 2d 198, 210 (D. Mass. 2002) (Saris, J.) ("there can be no breach of fiduciary duty where an ERISA plan is implemented according to its written, nondiscretionary terms"); *O'Neil v. Retirement Plan for*

*Salaried Employees of RKO General, Inc.*, 37 F.3d 55, 61 (2d Cir. 1994) (rejecting claim for

breach of the fiduciary duty of loyalty where fiduciary discharged "its duties with respect to a

plan in accordance with the documents and instruments governing the plan") (citing 29 U.S.C.

§ 1104(a)(1)(D)).

      C.      **Plaintiff's Claims Based Upon Alleged Violations of Sections 406(a) and 406(b) Fail Because Securities Lending is An Exempt Activity Under the Act**

Read as a whole, the Complaint does not support an inference that Defendants violated

Section 406 of the Act.  29 U.S.C. § 1106.  Though the Complaint includes recitation of the

statutory language, stating that Defendants violated Section 406 because it used Plan assets for

the benefit of other parties, collected unreasonable fees in connection with the securities lending

program, and placed their own interests ahead of those of the Plans (Compl. ¶ 16), none of the

allegations specify the statutory provision that Defendants violated, or the manner in which

Defendants violated the provision.

Plaintiff's allegations under § 406(a) include the following themes:

- "Defendants also violated certain provisions of ERISA that prohibit fiduciaries like Defendants from causing a retirement plan to engage in transactions with related parties and from engaging in self-dealing transactions.  By using Plan assets for the benefit of other parties, and by collecting unreasonable fees and other compensation in connection with securities lending and placing their own interests ahead of those of the Plans, Defendants engaged in multiple prohibited transactions, which are *per se* unlawful in violation of ERISA § 406, and not exempt under any individual, class, or statutory exemptions" (Compl. ¶ 16);

- "[T]he State Street Defendants violated ERISA § 406(a) by causing the Plans to loan their assets to parties in interest, namely the borrowers of loaned securities, for the benefit of the borrowers and Defendants" (Compl. ¶ 49);

- "The State Street Defendants, through the Collective Trust Funds, engaged in numerous prohibited transactions involving the Plans' assets with parties in interest, which transactions were per se prohibited by Section 406(a) of ERISA" (Compl. ¶ 73).

- 23 -

- Defendants "act[ed] for the benefit of themselves in managing the Collateral Pools and receiv[ed] compensation…from transactions involving plan assets."  (Compl. ¶ 73; *see id.* ¶ 49.)

Such naked allegations fail to specify, in accordance with *Iqbal*, the transactions that amounted to "self-dealing," or the specific provision of the Act that Defendants allegedly violated (*i.e.*, §§ 406(a)(1)(A), (B), (C), (D), or (E); or §§ 406(b)(1), (2), or (3)).  Yet again, the violations, if any, are left to the Court's imagination.

Moreover, the Complaint ignores the existence of numerous exemptions – set forth under ERISA and by the Department of Labor[29] – that permit the operation of securities lending programs on behalf of employee benefit plans.  The Department of Labor fully understands the role that affiliated lending agents perform in investment programs such as the ABA Collective Trust Funds, and has endorsed securities lending programs provided by affiliates.  That endorsement is reflected in carefully crafted class exemptions through which the restrictions of various ERISA provisions *do not apply* to the lending of securities that are assets of employee benefit plans.[30]

### D.     The Complaint Fails to Allege that State Street Corporation Owes Fiduciary Duties to the Fishman Plan

The Complaint should be dismissed against State Street Corporation, which is not an ERISA fiduciary for the Fishman Plan.  *See Stein v. Smith,* 270 F. Supp. 2d 157, 165 (D. Mass. 2003); *see also* ERISA § 402(a).  To state a claim for breach of fiduciary duty under ERISA, a

---

[29] *See* ERISA § 408(a) ("The Secretary shall establish an exemption procedure for purposes of this subsection.  Pursuant to such procedure, he may grant a conditional or unconditional exemption of any fiduciary or transaction, or class of fiduciaries or transactions, from all or part of the restrictions imposed by sections 1106 and 1107(a) of this title").  29 U.S.C. § 1108(a).

[30] *E.g.*, Department of Labor Prohibited Transaction Exemption 2006-16 ("Class Exemption to Permit Certain Loans of Securities by Employee Benefit Plans") (Oct. 31, 2006), 71 Fed. Reg. 63786, Wilson Decl., Ex. K; Department of Labor Prohibited Transaction Exemption 91-38 ("Amendment to Prohibited Transaction Exemption 80-51 Involving Bank Collective Investment Funds") (Jul. 12, 1991), 56 Fed. Reg. 31966, Wilson Decl., Ex. K; U.S. Dep't of Labor Adv. Op. 96-15A n.3 (Aug. 7, 1996), Wilson Decl., Ex. L.

- 24 -

plaintiff must plead facts sufficient to show that each defendant was "a fiduciary *with respect to the particular activity in question*." *Molasky v. Principal Mut. Life Ins. Co.*, 149 F.3d 881, 884 (8th Cir. 1998) (emphasis supplied and citation omitted).[31]  "Because one's fiduciary responsibility under ERISA is directly and solely attributable to his possession or exercise of discretionary authority, fiduciary liability arises in specific increments correlated to the vesting or performance of particular fiduciary functions in service of the plan, not in broad, general terms." *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998).

The Complaint offers no individualized factual allegations about SSC's role with respect to the Fishman Plan, the ABA Trust, the Collective Trust Funds, or a securities lending program. (Compl. ¶¶ 26-28.)  In particular, nothing in the Complaint suggests that SSC (i) exercises any discretionary authority or discretionary control respecting the plan's management or exercises any authority or control respecting management or disposition of its assets; (ii) renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has any authority or responsibility to do so; or (iii) has any discretionary authority or discretionary responsibility in the plan's administration.  ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  Although SSBT and SSNH have acknowledged their fiduciary status to the ABA Trust, the obligations of these companies are not imputed to the parent holding company, SSC.  *See Adkins v. Unum Provident Corp.*, 191 F. Supp. 2d 956, 958 (M.D. Tenn. 2002) (concluding that a holding company of an ERISA fiduciary does not automatically share the subsidiary's fiduciary duties).

---

[31] *See also Pegram,* 530 U.S. at 226 ("In every case charging breach of ERISA fiduciary duty … the threshold question is … whether [the entity charged] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint"); *Stein,* 270 F. Supp. 2d at 166 (stating that in order to have properly pleaded a breach by any defendant of a fiduciary duty, a plaintiff "must plead first that the defendant was a fiduciary with respect to [the Plan(s)] *and* that he or she breached a duty to that Plan that related to matters within his or her discretion and control") (emphasis supplied).

The Complaint's group allegations – repeatedly and generically referring to "Defendants" or the "State Street Defendants" (Compl. ¶¶ 61-68, 70-74) – should be rejected in this context. Under Federal Rule of Civil Procedure 8(a), courts have dismissed complaints that merely "lump[] the various classes of defendants into an undifferentiated mass and allege[] that all of them violated all of the asserted fiduciary duties." *In re Providian Fin. Corp. ERISA Litig.*, No. C 01-05027, 2002 WL 31785044, at *1 (N.D. Cal. Nov. 14, 2002) (finding that "[t]he resulting cause of action is so general that it fails to put the various defendants on notice of the allegations against them"); *see also In re McKesson HBOC, Inc. ERISA Litig.*, No. C00-20030, 2002 WL 31431588, at *3, 15-16 (N.D. Cal. Sept. 30, 2002) (the complaint "is replete with overly general allegations pursuant to which nearly all defendants are generally alleged to be liable for all breaches of fiduciary duty, all the while failing to identify specific defendants who are liable for specific breaches of specific fiduciary duties"). In this case, the documents creating the ABA Trust and each Collective Trust Fund make no reference to SSC as a fiduciary for the Plan.[32] Where, as here, the Complaint does not "proffer [a] factual basis for concluding that [a defendant] possessed such discretionary authority" and control, the particular defendant should be dismissed. *In re Mutual Funds Inv. Litig.*, 1:04:MD-15864, 2005 WL 3692756, at *8 (D. Md. Dec. 6, 2005) (dismissing a defendant "despite his allegedly major role" in the transactions that were the subject of the complaint where the complaint merely asserted that he "'was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect

---

[32] *See* ABA Members/Street Collective Trust Declaration of Trust (Dec. 5, 1991), Wilson Decl., Ex. H; ABA Members/State Street Collective Trust Amendment to Declaration of Trust (effective Dec. 1, 2004), Wilson Decl., Ex. H; Collective Trust Fund Declarations, Wilson Decl., Ex. C.

to management and administration of the Plan and/or management and disposition of the Plan's

assets'").[33]

## III.   SSGA IS NOT AN INCORPORATED ENTITY AND IS INCAPABLE OF BEING SUED

SSgA is an unincorporated division of SSBT and is incapable of being sued under

Massachusetts law.[34]   A "'plaintiff may not multiply defendants by breaking up a corporation or

other institution into its organizational components when those components have no separate

legal identity.'"   *Fitzgerald v. CBS Broadcasting, Inc.,* 491 F. Supp. 2d 177, 183 (D. Mass. 2007)

(quoting *Albers v. Church of Nazarene*, 698 F.2d 852, 857 (7th Cir. 1983)) (dismissing

complaint against two divisions of CBS Broadcasting Inc.); *Dodora Unified Commc'ns, Inc. v.

Direct Information Pvt. Ltd.* 379 F. Supp. 2d 10, 14 (D. Mass. 2005) ("[T]he capacity of an entity

other than an individual or corporation to sue or be sued is determined by the law of the state in

which the district court is held.   In Massachusetts, an unincorporated legal entity may not sue or

be sued").   In this case, public filings confirm that SSgA is a division of SSBT and it should be

dismissed from the action.[35]

---

[33] *See also Haber v. Brown*, 774 F. Supp. 877, 879 (S.D.N.Y. 1991) (dismissing "complaint [that] support[ed] its allegation that [defendant] is a fiduciary as defined in ERISA simply by incorporating terms directly from the statute"); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp.2d 1207, 1230 (D. Kan. 2004) (dismissing claim of co-fiduciary liability where plaintiffs' complaint did not provide factual allegations but simply "parrot[ed] the language of the co-fiduciary liability statute"); *Gerzog v. London Fog Corp.*, 907 F. Supp. 590, 602 (E.D.N.Y. 1995) (dismissing ERISA claim where the complaint's only allegations regarding defendant's fiduciary status were "conclusory references that '[u]pon information and belief, [defendant] was aware of and approved … the reduced and improper pension [benefits]'").

[34] Form S-1/A (Apr. 30, 2008) at 71-72, Wilson Decl., Ex. D; Form S-1/A (Jan. 23, 2009) at 86-87, Wilson Decl., Ex. E; Form S-1/A (Apr. 17, 2009) at 92-93, Wilson Decl., Ex. F.

[35] *See supra* n.3.

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be granted.


Dated:  June 22, 2009

Respectfully submitted,

s/ Lori A. Martin_____

Lori A. Martin (*pro hac vice*)
Dawn M. Wilson (*pro hac vice*)
Brad E. Konstandt (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
lori.martin@wilmerhale.com

Jeffrey B. Rudman (BBO #433380)
Phillipa J. Gage (BBO #664528)
Manique W. Bloom (BBO #670537)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
jeffrey.rudman@wilmerhale.com

*Counsel for Defendants State Street*
*Corporation, State Street Bank & Trust*
*Company, State Street Bank & Trust*
*Company of New Hampshire, and State*
*Street Global Advisors*

CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2009, I caused a copy of this Document to be served electronically, via the electronic filing system, on the registered participants as identified on the Notice of Electronic Filing (NEF) and by first-class mail on those indicated as non-registered participants.

/s/ Lori A. Martin

Lori A. Martin

US1DOCS 7207605v1