# EXHIBIT D

**State Street Bank and Trust Company**
**Quality D Short-Term Investment Fund**
**Financial Statements**
**December 31, 2008**

Confidential

**State Street Bank and Trust Company**
**Quality D Short-Term Investment Fund**
*Notes to Financial Statements*
December 31, 2008

The Fund adopted Financial Accounting Standards Board Statement of Financial Accounting Standards No. 157, Fair Value Measurements ("FAS 157"), effective January 31, 2008. In accordance with FAS 157, fair value is defined as the price that the Fund would receive upon selling an investment in a timely transaction to an independent buyer in the principal or most advantageous market of the investment.

Various inputs are used in determining the value of the Fund's investments. FAS 157 established a three-tier hierarchy of inputs to establish classification of fair value measurements for disclosure purposes. These inputs may be observable or unobservable. Observable inputs are inputs that reflect the assumptions market participants would use in pricing the asset or liability developed based on market data obtained from sources independent of the reporting entity. Unobservable inputs are inputs that reflect the reporting entity's own assumptions about the assumptions market participants would use in pricing the asset or liability developed based on the best information available under the circumstances. The inputs used for valuing securities are not necessarily an indication of the risk associated with investing in those securities. The three-tier hierarchy of inputs is summarized in the three broad Levels listed below.

- Level 1 – quoted prices in active markets for identical investments
- Level 2 – other significant observable inputs (including quoted prices for similar investments, interest rates, prepayment speeds, credit risk, etc.)
- Level 3 – significant unobservable inputs (including the Fund's own assumptions in determining the fair value of investments)

The following is a summary of the inputs used as of
December 31, 2008 in valuing the Fund's investments carried at value:

| Valuation Inputs | Investments in Securities |
| --- | --- |
| Level 1 - Quoted Prices | $ - |
| Level 2 - Other Significant Observable Inputs | 37,153,730,259 |
| Level 3 - Significant Unobservable Inputs | - |
| Total | $37,153,730,259 |

**B.  Security Transactions and Related Investment Income**
Security transactions are accounted for on the trade date. In determining the net gain or loss on securities sold, the cost of securities is determined by the average cost method. Interest income is recorded on the accrual basis. Interest income is includes accretion of discounts and amortization of premiums, if any.

**C.  Income Taxes**
The State Street Bank and Trust Company Minnesota State Board of Investments Fund is part of a "Group Trust" described in Revenue Ruling 81-100, 1981-1, C.B. 326, that is exempt from taxation under section 501 (a) of the Internal Revenue Code of 1986. State Street has received a tax determination letter from the Internal Revenue Service which confirms the foregoing statement.

12

Confidential

SS_FISH 0000704

In the prior year, SSgA elected to defer the adoption of Financial Accounting Standards Board ("FASB") Interpretation No. 48, Accounting for Uncertainty in Income Taxes, an interpretation of FASB Statement No. 109 ("FIN 48") in accordance with FIN 48-2, Effective Date of FASB Interpretation No. 48 for Certain Nonpublic Enterprises ("FSP 48-2"). FSP 48-2 allowed the Fund to defer the adoption of FIN 48 until annual periods beginning after December 15, 2007.

On December 30, 2008, the FASB issued FIN 48-3, Effective Date of FASB Interpretation No. 48 for Certain Nonpublic Enterprises ("FSP 48-3"), which once again deferred the effective date of FIN 48. Under FSP 48-3, in the absence of early adoption, FIN 48 will become effective for the Fund at December 31, 2009.

Based on its continued analysis, SSgA has determined that the adoption of FIN 48 will not have a material impact to the Fund's financial statements. However, this conclusion regarding FIN 48 may be subject to review and adjustment at a later date based on on-going analyses of tax laws, regulations and interpretations thereof and other factors.

**D. Issuance and Redemption of Units of Participation**
Issuances and redemptions of participant units are made on each business day ("valuation date"). As permitted under the Fund's Declaration of Trust, participant units are purchased and redeemed at a constant net asset value of $1.00 per unit based on the amortized cost of the Fund's investments and excluding any unrealized appreciation or depreciation. In the event that a significant disparity develops between the constant net asset value and the market-based net asset value of the Fund, the Trustee may, in its discretion, determine that "special circumstances" exist and continued redemption at a constant $1.00 net asset value would create inequitable results for the Fund's unitholders. In these circumstances, the Trustee, in its sole discretion and acting on behalf of the Fund's unitholders, may direct that units be redeemed for all transaction or certain transactions at the market-based net asset value, engage in in-kind redemptions, or take other action to avoid inequitable results to participants until such time as the disparity between the market-based and the constant net asset value per unit is deemed to be immaterial. At December 31, 2008, the Trustee does not believe such special circumstances exist.

**E. Distributions to Participants**
Distributions from net investment income are recorded and paid daily. Amounts received by participants are reduced by payments to borrowers and operating expenses under the Securities Lending Program. Distributions of net capital gains, if any, are made at least annually. For distribution purposes only, net realized and unrealized gains deemed to arise from amortization of discount and premium are included in distributions from net investment income.

13

F. **Repurchase Agreements**

The Fund may enter into repurchase agreements whereby the Fund receives delivery of underlying collateral securities, and the seller of such securities agrees to repurchase the securities at an agreed upon price and time. The Fund values the underlying collateral securities daily on a mark-to-market basis to determine that the value, including accrued interest, is at least equal to the repurchase price. The underlying collateral securities consist of securities in which the Fund is permitted to invest. The use of repurchase agreements involves certain risks. If the seller defaults as of a result of its bankruptcy or otherwise, and the value of the collateral declines, realization of the collateral by the Fund may be delayed or limited. The Fund may enter into repurchase agreements maturing within thirty days with domestic dealers, banks and other financial institutions deemed to be creditworthy by the investment manager. Collateral for certain tri-party repurchase agreements is held at a custodian in a segregated account for the benefit of the Fund and the counterparty.

G. **Tri Party**

The Fund may enter into repurchase agreements maturing within seven days with domestic dealers, banks and other financial institutions deemed to be creditworthy by the investment manager. Collateral for certain tri-party repurchase agreements is held at a custodian in a segregated account for the benefit of the Fund and the counterparty.

H. **Use of Estimates**

The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities at the date of the financial statements and the reported amounts of income and expenses during the reporting period. Actual results could differ from those estimates.

3. **Investment Transactions**

Purchases and sales of short-term investments (including maturities) during the year ended December 31, 2008 were $1,672,873,499,989 and $1,728,465,110,899, respectively.

4. **Expenses**

Under the Declaration of Trust, the Fund may pay certain expenses for services received during the year. SSgA is paid a management fee 0.0175% of the Fund's average net asset value at amortized cost.

5. **Indemnification**

In the normal course of business, the Fund enters into contracts that contain a variety of representations and warranties which provide general indemnifications. The Fund's maximum exposure under these arrangements is unknown as this would involve future claims that may be made against the Fund that have not yet occurred. However, based on our experience, the Fund expects the risk of loss to be remote.

14

SS_FISH 0000706